Mary J. DeNARDO, Respondent,

v.

DIVINE REDEEMER MEMORIAL HOS-
PITAL and St. Paul Fire & Marine In-
surance Company, Respondents (C5–
89–345), Relators (C7–89–346),

and

Samaritan Hospital and Chubb Group
Insurance Company, Relators
(C5–89–345), Respondents (C7–89–346),

and

Minnesota Department of Jobs &
Training/DVR, Intervenor,
Respondent,

and

Group Health, Inc., Intervenor,
Respondent.

Nos. C5–89–345, C7–89–346.

Supreme Court of Minnesota.

Jan. 19, 1990.

Michael J. Patera, Minneapolis, for Di-
vine Redeemer, et al., respondents (C5–89–
345, relators (C7–89–346).

Michael C. Jackman, Larkin, Hoffman,
Daly & Lindgren, Ltd., Minneapolis, for
Samaritan Hosp., et al., relators (C5–89–
345), respondents (C7–89–346).

Timothy J. McCoy, Sieben, Grose, Von
Holtum, McCoy & Carey, Ltd., Minneapolis,
for Mary DeNardo.

Hubert H. Humphrey, III, Atty. Gen.,
Roger A. Sorbel, Representative, St. Paul,
for MN Dept. of Jobs & Training.

Randall Sayers, St. Paul, for Group
Health.

POPOVICH, Chief Justice.

The employee sustained numerous low back injuries, including a specific lifting injury on February 7, 1981, while working at Divine Redeemer Hospital, and a *Gillette* injury in May 1985 while working at Samaritan Hospital. The Workers' Compensation Court of Appeals ("WCCA") affirmed an award of temporary total and temporary partial disability benefits, extending only the period during which temporary partial benefits are payable, and affirmed the apportionment of liability two-thirds to Divine Redeemer Hospital and one-third to Samaritan Hospital. By writs of certiorari, both of the employers and their workers' compensation liability insurers sought review. We affirm.

I.

The employee, Mary J. DeNardo, has a long history of low back problems. In 1976, following several episodes of low back pain, the employee was diagnosed as suffering from degenerative disc disease. In October 1977, she began working as a nurse at Divine Redeemer Hospital. On February 7, 1981, the employee sustained a low back injury while working at Divine Redeemer. On this date, the employee and an orderly were transferring a 250–pound patient from a chair to bed when the orderly stopped lifting, forcing the employee to bear the patient's full weight. Her back twisted and she felt a sharp pain across her low back.

As a result of the 1981 incident, she was off work for approximately five weeks. Upon returning to Divine Redeemer, she performed light duty work, having difficulty executing the same duties as before the injury. Her physician eventually released her to work without physical restrictions after August 6, 1981, "when her pain was essentially resolved."

On September 17, 1982, she was in a car accident. Although she experienced some additional low back pain, after four to six weeks the pain returned to the level that existed before the car accident. In 1982, the employee decided to become a registered nurse ("RN"), to avoid the more physical nursing duties, and entered an accelerated program for an associate degree. When her employment at Divine Redeemer ended in early 1983, she was working as an RN.

In April 1983, she became employed as an RN at Samaritan Hospital, initially working two-to-three days a week and adding more time as it became available. Her physical duties, which included considerable lifting, did not change as a result of the switch in employers. In April 1984, she requested four-fifths time work, feeling full time would exacerbate her low back pain. She would often lie in bed on an ice pack immediately after work.

By October 1984, the back pain was constant and severe, and she sought treatment. By November 1984, her low back pain caused severe difficulties with job performance and she began missing weeks of work in early 1985. Eventually, in May 1985, she quit her staff nurse position on the recommendation of her treating physician, who had restricted lifting to 20–to–25 pounds, with no bending or twisting.

Beginning in November 1985, the employee sought work that did not involve lifting and for which she was qualified with her associate degree. Subsequently, the Department of Vocational Rehabilitation referred her to St. Paul Rehabilitation, and she found employment, in September 1986, as a nurse coordinator at the Struve Clinic. Even though this was a job-share position, from September 1986 until January 1, 1987, she worked full-time because her co-worker was on maternity leave. When the co-worker returned, she worked a three-fifths schedule, continuing to have low back pain, but not as much as when she was a staff nurse.

The employee filed a claim petition seeking temporary total/temporary partial disability benefits as a result of the specific injury sustained on February 7, 1981, at

Divine Redeemer Hospital and a *Gillette* [1] injury sustained as of May 2, 1985, at Samaritan Hospital.

The compensation judge awarded temporary total/temporary partial disability benefits from May 2, 1985, through September 30, 1986, and under equitable apportionment principles apportioned two-thirds of the liability for the temporary benefits to Divine Redeemer and its insurer, and one-third to Samaritan and its insurer. The compensation judge found, however, that the employee was not entitled to disability benefits when she suffered a wage loss in January 1987. On appeal, the WCCA affirmed the apportionment of liability but reversed the determination that the employee was not entitled to temporary partial disability benefits after January 1987. By writ of certiorari both employers and their insurers appealed to this court.

## II.

The first issue raised by this appeal concerns the compensation judge's findings, as affirmed, relating to liability apportionment. We affirm because this issue is governed by this court's long-standing equitable apportionment principles.

■ In 1983, the Minnesota legislature added Minn.Stat. § 176.101, subd. 4a,[2] to the workers' compensation statute. Divine Redeemer has advanced the theory that apportionment of liability among multiple employers and their insurers is governed solely by this provision or has been restricted by principles enunciated by this court in *Joyce v. Lewis Bolt & Nut Co.,* 412 N.W.2d 304 (Minn.1987). Put simply, the statute does not refer to the apportionment of lia-

bility among employers and their insurers but rather to the "apportionment" between the quantum of disability attributable to a work injury for which permanent partial compensation is payable and a preexisting condition that meets the statutory requirements. As for *Joyce,* we simply did not address the apportionment issue. We believe equitable apportionment, as it has been established by judicial decision, is unaffected by section 176.101, subdivision 4a, and the existing principles of apportionment are applicable regardless of whether the several injuries extend across "old" and "new" law.

■ Over the years, the court has used the term "apportionment" in reference to the distribution of responsibility for three different types of benefits. (1) Common law principles ·of equitable apportionment have long been applied to require successive employers and successive insurers each to contribute their proportionate share of the total responsibility for temporary total and temporary partial disability benefits. *E.g., Goetz v. Bulk Commodity Carriers,* 303 Minn. 197, 199–200, 226 N.W.2d 888, 890 (1975); *Haverland v. Twin City Milk Producers Ass'n,* 273 Minn. 481, 488–89, 142 N.W.2d 274, 280–81 (1966). The same principles of equitable apportionment also have been applied to allocate responsibility for payment of permanent partial disability ("PPD") benefits between successive employers or successive insurers when benefits are awarded on the basis of a single permanency rating of the disability resulting from more than one compensable injury. *See, e.g., Schultz v. Trevilla Nursing Home,* 450 N.W.2d 294 at 295 (Minn.1990, filed herewith). (2) The

---

1. *Gillette v. Harold, Inc.,* 257 Minn. 313, 321–22, 101 N.W.2d 200, 205–06 (1960) (where a preexisting infirmity is aggravated by repetitive minute trauma as a result of the ordinary and necessary duties of employment, the disability resulting from such aggravation is compensable · as a personal injury under the workers' compensation statute).

2. The subdivision provides in part:
   **Preexisting condition or disability; apportionment.** (a) If a personal injury results in a disability which is attributable in part to a preexisting disability that arises from a conge-

nital condition or is the result of a traumatic injury or incident, whether or not compensable under this chapter, the compensation payable for the permanent partial disability pursuant to this section shall be reduced by the proportion of the disability which is attributable only to the preexisting disability. An apportionment of a permanent partial disability under this subdivision shall be made only if the preexisting disability is clearly evidenced in a medical report or record made prior to the current personal injury. ·
   Minn.Stat. § 176.101, subd. 4a (1988).

term "apportionment" is often used in connection with the process of attributing a specific permanency rating to each of several injuries arising out of and in the course of employment for which the employee seeks compensation in a single proceeding. Once a specific permanency rating has been assigned to a discrete work-related injury, it is apparent that the imposition of liability for PPD benefits "has nothing to do with equitable apportionment." *See, e.g., Kulp v. Sheraton Ritz Hotel*, 450 N.W.2d 296 at 299 (Minn.1990, filed herewith) (quoting *Marose v. Maislin Transport*, 413 N.W.2d 507, 513 (Minn.1987)). (3) Finally, "[f]or injuries which occurred before January 1, 1984, apportionment [between employer and employee—that is, a reduction of the benefits payable to the employee] was not allowed when a work-related injury aggravated, accelerated or combined with a non-work-related preexisting condition to produce a disability." *Giese v. Green Giant Co.*, 426 N.W.2d 879, 880 (Minn.1988); *see also, e.g., Wallace v. Hanson Silo Co.*, 305 Minn. 395, 396–97, 235 N.W.2d 363, 363–64 (1975). As we recognized in *Giese*, "[t]his result was altered by Minn.Stat. § 176.101, subd. 4a (1984), which allows the compensation payable for a permanent partial disability to be reduced by the proportion of the disability attributable to a pre-existing disability arising from a congenital or traumatic incident." 426 N.W.2d at 880–81 (footnote omitted). The employee in the present case, however, has sought neither PPD benefits nor permanency rating; her claim here is for temporary benefits only, and the compensation judge and the WCCA quite properly applied the well-recognized principles of equitable apportionment. Furthermore, after reviewing the evidence contained in the record relevant to the factual determinations here, we conclude the findings as to apportionment of liability were not manifestly contrary to the evidence. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 60 (Minn.1984).

### III.

The other issue before us concerns the WCCA's award of further temporary partial disability benefits. The compensation judge awarded temporary benefits only from May 2, 1985, to September 30, 1986, but the WCCA reversed and also awarded ongoing benefits after January 1987.

Because the employee was unemployed from May 1985 to September 1986, obviously, the compensation judge's award of benefits for this time period was incorrect. *Parson v. Holman Erection Co., Inc.*, 428 N.W.2d 72, 76 (Minn.1988). Following a diligent job search, the employee was only able to find a part-time position. The employee thus became eligible for temporary partial benefits when she obtained the lighter duty, part-time employment at a wage loss in September 1986. *Morrissey v. Country Club Mkts., Inc.*, 430 N.W.2d 169, 170 (Minn.1988). Because her co-worker was on maternity leave when the employee started this new job, the employee was allowed to work full-time from September 1986 to January 1987 and had no wage loss. When the co-worker returned to work, however, the employee started the part-time position for which she was hired. A part-time position was all the employee was able to obtain because of her disability, and we believe the part-time wage was the most reliable evidence, on the record before us, of her earning capacity. *See Mitchell v. White Castle Sys., Inc.*, 290 N.W.2d 753, 757 (Minn.1980). Thus, the WCCA's award of temporary benefits was appropriate. The employers/insurers argued the employee can work full-time, but this court is not the proper forum for this issue. The employers/insurers can request modification of the employee's rehabilitation plan in an administrative conference. Minn.Stat. § 176.102, subd. 8 (1988).

Affirmed.