Ruth D. KULP, Respondent,

v.

SHERATON RITZ HOTEL and
INA/Aetna, Respondents,

and

Howard Johnson's Motel and The Travelers Insurance Company, Relators.

No. C8–88–2483.

Supreme Court of Minnesota.

Jan. 19, 1990.

Fred A. Simon, Alex B. Leibel & Associates, Minneapolis, for relators.

Frederick E. Kaiser, Moundsview, for Ruth Kulp.

Kathy A. Endres, Burton D. Anderson, & Associates, Bloomington, for respondent.

---

POPOVICH, Chief Justice.

On August 26, 1983, respondent injured her neck, right arm, and elbow, in the course of her employment with the Sheraton Ritz Hotel ("Sheraton"). On September 8, 1985, respondent sustained further injury to her back, neck, left arm, and hands and wrists, while working at the Howard Johnson's Motel. She claimed permanent partial disability ("PPD") of both her back, and her hands and wrists as a result of these incidents. The compensation judge awarded PPD compensation for only the employee's hand and wrist injury, attributing liability to the 1983 Sheraton incident and assigning the liability for the temporary benefits to relators. The Workers' Compensation Court of Appeals ("WCCA") reversed, assigning the left wrist PPD to the 1985 incident, and affirmed the right wrist PPD to the 1983 injury; the denial of liability apportionment pursuant to the requirements of Minn.Stat. § 176.101, subd. 4 (1988); the extent of hand and wrist, and back PPD; the number of hours the employee worked; the reasonableness of the chiropractic treatment; and the denial of attorney fees. We affirm in part, reverse in part, and remand.

## I.

The work history of respondent Ruth D. Kulp includes cleaning houses, washing dishes, waitressing, and working in a potato factory. When she began work in the Sheraton laundry in 1979, she had no problems with her back, neck, arms, or hands.

On August 26, 1983, the employee was injured at the Sheraton. She was pulling towels, clothes, and heavy bedding out of a laundry chute that was backed up to about the 14th or 17th floor, when she noticed swelling in both hands. The employee also developed symptoms in her neck, right shoulder, and back as she continued to work.

On September 5, 1983, the employee was seen for pain in her neck, shoulder, right arm, and right hand at Eitel Hospital's emergency room, which referred her to the Nicollet Clinic, where she saw Dr. John Dunne on September 7, 1983. Records indicate respondent was treated primarily for pain in her right shoulder, right arm, and neck. Dr. Dunne diagnosed a shoulder strain, right-elbow inflammation, and right-wrist tendonitis.

The employee returned to work at the Sheraton around October 12, 1983, but not to her job in the laundry which would have been too strenuous, instead being switched to the kitchen. On October 29, 1983, she fell and struck her left knee while running for a bus. On November 30, 1983, she fell again on her way to work, which resulted in an increase of her right elbow pain, but she continued to work full-time. After four months of treatment, Dr. Dunne indicated respondent was working full-time without any major problems.

Respondent first saw Dr. Robert Bednar, a chiropractor, on June 22, 1984. Her complaints then were of her neck, right shoulder, right arm, and low back. Dr. Bednar treated her entire spine, but not her hands or wrists. By August 20, 1984, she was showing a favorable response to the treatment, but fell again while trying to catch a bus. This fall caused her low back, buttock, and neck pain. On December 3, 1984, she slipped on ice, falling onto her knees. Dr. Bednar stated she injured her knees in this fall, but did not sustain any permanent back injury.

As of September 8, 1985, respondent still had swollen hands, and low back and upper back pain, and was seeing Dr. Bednar an average of two times per week. On that date she was working in the kitchen at Howard Johnson's—the new owners of the hotel—when she fell backwards over a metal rack, landing on her left arm or wrist, also striking her low back about eight inches above the waist and bumping her head. When she attempted to get up and raise her left arm, she felt a sharp pain extending into her neck and down her back.

On September 9, 1985, respondent complained to Dr. Bednar of headaches, and pain in her neck, right shoulder, arm, hands and wrists, and low back. Her symptoms also included a vein puffing out of her left arm. Dr. Bednar treated her back and neck problems, and referred her to a medi-

cal doctor, Dr. David Olson, who saw her on October 16, 1985, for her hands and wrists. An EMG proved compatible with carpal tunnel syndrome, and Dr. Olson performed carpal tunnel surgery on both wrists on November 3, 1985. He reported respondent regained her motion following the surgery, and he released her to work on January 2, 1986.

Respondent returned to work on a part-time basis in April 1986, but could not lift heavy pans or dishes and sorted silverware instead. She fell again on the bus in April 1986. Her job was terminated in May 1986, and Dr. Bednar worked with a qualified rehabilitation counselor in an attempt to find her employment. Respondent eventually returned to her old job at Howard Johnson's. On January 10, 1987, when getting off a bus, she broke her ankle. Dr. Bednar saw her following another fall on April 22, 1987, but there was no change in the condition of her neck or back.

Respondent filed a claim petition seeking 5% PPD of each wrist and unrated PPD of the back, and relators filed a petition for contribution and/or reimbursement against the Sheraton and INA/Aetna for the temporary total and temporary partial benefits, medical expenses, and rehabilitation expenses relators paid respondent after October 16, 1985. Respondent later amended her claim petition of unrated PPD of the back to 15% PPD of the back due to the 1983 injury and 7% PPD of the whole body as a result of the 1985 injury. In addition, she sought payment of unpaid chiropractic expenses, attorney fees, and a wage correction.

The compensation judge found respondent had sustained a Gillette[1] injury to each hand and wrist as a result of the August 26, 1983, work-related incident, and awarded 5% PPD of each hand and wrist together with an additional 15% for simultaneous injury against the Sheraton and INA/Aetna. The compensation judge denied respondent Kulp's claim for PPD of the back because of her numerous non-

work-related falls. The compensation judge also denied relators' reimbursement/contribution claim.

On appeal, the WCCA reversed, holding respondent had sustained a Gillette injury to her left hand and wrist in 1985, but affirmed the 1983 Gillette injury to her right hand and wrist, therefore 5% PPD was attributable to the right hand and wrist, and .5% PPD to the whole body—under the "new" law—was attributable to the left hand and wrist. The WCCA affirmed she had sustained no work-related back disability; Dr. Bednar's treatments after July 14, 1986 were not reasonable; the denial of relators' claim for apportionment; and the denial of attorney fees. This appeal followed.

II.

██ With regard to the disability resulting from respondent's hand and wrist injuries, the rating of the extent of PPD under the disability schedules is not in dispute. Responsibility for the hand and wrist injuries, however, is disputed. The compensation judge held a Gillette work-related injury at the Sheraton was the sole cause of the disability to both hands. The WCCA, however, reversed with respect to the left hand, attributing that disability to a 1985 Howard Johnson's Gillette injury. According to respondent, the right hand was primarily involved in the 1983 Sheraton incident, whereas her left hand was primarily involved in the Howard Johnson's accident. In light of respondent's testimony, as well as the medical evidence of record, we believe the WCCA did not exceed its authority in reversing the compensation judge's determination and affirm the WCCA's substituted finding. Hengemuhle v. Long Prairie Jaycees, 358 N.W.2d 54, 60 (Minn. 1984).

III.

Relators also challenge the denial of their claim for contribution or reimburse-

---

1. Gillette v. Harold, Inc., 257 Minn. 313, 321–22, 101 N.W.2d 200, 205–06 (1960) (where a preexisting infirmity is aggravated by repetitive minute trauma as a result of the ordinary and necessary duties of employment, the disability resulting from such aggravation is compensable as a personal injury under the workers' compensation statute).

ment of temporary benefits, and rehabilitation and medical expenses paid following disability in 1985. Although only implicit in the WCCA decision, it is apparent from the tenor of relators' brief that both employers understand that the compensation judge's determination that the Sheraton Ritz Hotel is responsible for payment of PPD compensation for the right wrist, a *Gillette* injury which occurred while respondent was employed by the Sheraton, has been left undisturbed and that the Howard Johnson's Motel, as her employer on September 8, 1985, when respondent sustained a *Gillette*-type injury to the left wrist, is responsible for payment of PPD compensation for the left wrist.

Once it is understood that the WCCA assigned a separate permanency rating to each of two discrete work-related injuries, it is apparent that allocation of responsibility for those injuries to the responsible employer "has nothing to do with equitable apportionment." *Marose v. Maislin Transport,* 413 N.W.2d 507, 513 (Minn. 1987).

Although the basis for the compensation judge's denial of Howard Johnson's Motel's claim for contribution or reimbursement with respect to temporary disability and other benefits is not articulated in his decision, it appears the WCCA erroneously applied section 176.101, subdivision 4a, in affirming that determination. Since each employer was responsible for the PPD of one wrist, it is logical that the temporary benefits, which the WCCA stated were based on the wrist injuries, should have been equitably apportioned between the two employers. For the reasons set forth in *DeNardo v. Divine Redeemer Memorial Hospital,* 450 N.W.2d 290, 292 (Minn.1990, filed herewith), we conclude the matter should be remanded for reconsideration of equitable apportionment pursuant to appropriate legal principles.

## IV.

The employee has challenged certain other findings of the compensation judge. We have independently scrutinized this record and are satisfied the findings, as affirmed,

are not manifestly contrary to the evidence. *Hengemuhle,* 358 N.W.2d at 60.

Affirmed in part, reversed in part, and remanded.