Rafe FLEENER, Respondent,

v.

CBM INDUSTRIES, Self–Insured, administered by Alexsis, Inc., Relator.

No. C2–96–2069.

Supreme Court of Minnesota.

May 29, 1997.

Brabbit & Salita, Dean M. Salita, Minneapolis, for Employee-Respondent.

Pustorino, Pederson, Tilton & Parrington, P.A., Louis R. Tilton, Jeffrey J. Lindquist, Minneapolis, for Employer/Insurer–Relator.

OPINION

KEITH, Chief Justice.

The Workers' Compensation Court of Appeals affirmed, by panel majority, the compensation judge's award of permanent partial disability benefits. We affirm.

On September 28, 1989, Rafe Fleener sustained a compensable back injury, disc herniations at the L3–4 and L4–5, while working for Metro Carpet Cleaners. In January 1990, he had laminectomy and discectomy surgery at the L3–4. Following recovery from surgery, in June 1990, Fleener went to work for a landscaping company, laying sod and driving heavy equipment. In August 1990, Fleener, Metro Carpet (uninsured) and the Special Compensation Fund negotiated a settlement for $46,500, less $6,500 in attorney fees. The settlement agreement stated that Fleener accepted the lump sum payment "as a full, final and complete settlement" for all claims arising out of the September 1989

work injury, exclusive of medical benefits.[1] The settlement agreement was approved and an award issued on August 14, 1990.

On September 8, 1993, while employed by CBM Industries, Fleener sustained another compensable back injury, a disc herniation at the L5–S1. Following this second injury, Fleener sought temporary partial and permanent partial disability benefits. The compensation judge denied the temporary partial benefits claim but awarded impairment compensation for a 7% disability pursuant to Minn. R. 5223.0390, subp. 4C(1) (1993). Concluding that the 7% impairment resulted from the 1993 injury alone, the compensation judge declined to reduce pursuant to Minn. Stat. § 176.101, subd. 4a. On the appeal of CBM, the WCCA affirmed by panel majority, also concluding that because the award for the second low back injury did not include any permanency attributable to the first low back injury, there was nothing to apportion. CBM has sought review on certiorari, contending that the compensation judge and WCCA erred in declining to apply Minn.Stat. § 176.101, subd. 4a.

In recognition that the compensation act was designed for the protection of all workers coming within its purview, so that employers must take their employees as they find them, with all the infirmities the employees bring to their employment, the long standing rule is that "when the usual tasks ordinary to an employee's work substantially aggravate, accelerate, or combine with a preexisting disease or latent condition to produce a disability, the entire disability is compensable, no apportionment being made on the basis of relative causal contribution of the preexisting condition and the work activities." *Vanda v. Minnesota Mining & Mfg. Co.*, 300 Minn. 515–16, 218 N.W.2d 458 (1974). In adhering to this rule in *Wallace v. Hanson Silo Co.*, 305 Minn. 395, 396, 235 N.W.2d 363, 364 (1975), we declined to apportion disabilities in the absence of statutory authority. We also noted, however, that it might be unjust to burden the employer with responsibility for that part of the permanent partial disability which is not related to a work injury and recommended the problem to the legislature. *Id.* In response, in 1983, the legislature added Minn.Stat. § 176.101, subd. 4a,[2] which allows the compensation payable for a permanent partial disability to be reduced by the proportion of the disability attributable to a preexisting disability arising from a congenital condition or traumatic incident. Subdivision 4a applies to injuries that occurred after January 1, 1984. Act of June 7, 1983, ch. 290, §§ 66, 176, 1983 Minn. Laws 1310, 1348, 1405.

The disability schedules developed following the 1983 revisions to the compensation act generally measure permanent partial disability by assigning a percentage of disability to the body as a whole to diagnostic descriptions of impairments.[3] The disability schedules further direct that any preexisting disability be rated under one of the categories in the schedules. Minn. R. 5223.0250, subp. A. If the preexisting disability occurred be-

---

1. The settlement agreement also recited that Fleener alleged at least an 11% impairment, although the disability was at that time unrated, that the Special Compensation Fund alleged that any impairment was the result of preexisting causes, and that the $46,500 was intended to compromise all claims with the exception of future medical claims.

2. Minn.Stat. § 176.101, subd. 4a provides:

(a) If a personal injury results in a disability which is attributable in part to a preexisting disability that arises from a congenital condition or is the result of a traumatic injury or incident, whether or not compensable under this chapter, the compensation payable for the permanent partial disability pursuant to this section shall be reduced by the proportion of the disability which is attributable only to the preexisting disability. An apportionment of a permanent partial disability under this subdivision shall be made only if the preexisting disability is clearly evidenced in a medical report or record made prior to the current personal injury. Evidence of a copy of the medical report of record upon which apportionment is based shall be made available to the employee by the employer at the time compensation for the permanent partial disability is begun.

(b) The compensable portion of the permanent partial disability under this section shall be paid at the rate at which the entire disability would be compensable but for the apportionment.

3. *See generally,* Altman, Benanav, Keefe, Volz, *Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments,* 13 Wm. Mitchell L.Rev. 843, 896 (1987).

fore January 1, 1984, and was rated pursuant to Minn.Stat. § 176.101, subd. 3, the pre–1984 rating is to be converted to a post–1984 "whole body" rating and subtracted from the whole body rating assigned to the current disabled condition. Minn. Rule 5223.0250, subpt. C. Where a disputed rating has been closed out to a stipulated rating but payments were made on a different rating, the rating for purposes of the statutory apportionment rule is the closed-out rating. *Id.*, subpt. C(2). In 1993, the disability schedules based on diagnostic criteria were replaced by a new scheme based on "[l]oss of function" as it "relates to some action of an organ of the body which can be measured by generally accepted measurement testing techniques according to a reasonable scale under the 1993 method," if a loss of function cannot be measured, "abnormality is used as an appropriate proxy for the loss of function." In the Matter of the Proposed Workers' Compensation Rules, *Report of Administrative Law Judge* at 6–7, (May 11, 1993).

■ There is no retroactive application of the 1993 schedules to injuries occurring before July 1, 1993, the effective date of the rules. *Boerger v. Northern Paving*, slip op. at 4, n. 7, WCCA File No. 472–56–5094 (WCCA October 25, 1994). Under the pre-1993 schedules, aggregated ratings for a back injury under separate categories of the same section of the schedule are permissible if necessary to represent the functional loss, see, *e.g.*, *Fougner v. Boise Cascade Corp.*, 460 N.W.2d 1 (Minn.1990); *Deschampe v. Arrowhead Tree Serv.*, 428 N.W.2d 795, 799–800 (Minn.1988); but under the 1993 schedules, for a single injury, aggregated ratings are not allowed, Minn. R. 5223.0390, subp. 1. No mention is made as to the allowance or disallowance of cumulation of ratings for successive injuries. Also, unlike the 1984–1992 disability schedules which provide for the conversion of previously rated, preexisting impairments for statutory apportionment purposes, the new schedules do not indicate how 1984–1992 rated or ratable disabilities are to be treated for this purpose. While CBM assumes that successive, discrete injuries are to be combined and rated as one under the current schedule, we think it somewhat presumptuous in this case to meld apparently incompatible methods of measuring disability without further guidance, particularly where the preexisting disability was closed out to a stipulated rating years before the adoption of the new schedules. Moreover, when the primary aim of statutory apportionment is to alleviate the burden on employers for that part of the permanent partial disability which is not related to a work injury, a "windfall of relief" by virtue of the employee's compromised claim with a prior employer appears to swing wide of the mark.[4]

■ In any event, this case is not, as the compensation judge and WCCA majority concluded, about the allocation of responsibility for disability between a preexisting condition and a subsequent work injury. Instead, this case is more about attributing a specific permanency rating to each of two discrete work-related injuries, in which case the allocation of responsibility for those injuries to the preexisting condition and the work injury does not implicate statutory apportionment. *Cf. Kulp v. Sheraton Ritz Hotel*, 450 N.W.2d 296, 299 (Minn.1990), citing *Marose v. Maislin Transp.*, 413 N.W.2d 507, 513 (Minn. 1987). "The employee settled his claim for permanent partial disability benefits resulting from the 1989 injury. [CBM is] liable for the permanent disability which resulted from the 1993 injury." *Fleener v. CBM Industries*, ___ Workers' Comp. Dec. ___, slip op. 5, File No. 530–80–2449 (WCCA September 11, 1996). The WCCA properly affirmed the compensation judge's award.

---

**4.** As the WCCA majority observed, while subdivision 4a provides limited apportionment for preexisting nonwork-related injuries, it also provides authority for apportionment for preexisting work-related injuries; yet in regard to the latter, the purpose of subdivision 4a is less clear: "It is most unlikely that the legislature intended by Minn.Stat. § 176.101, subd. 4a (1994), to provide either a windfall of double recovery for one of the injuries to the employee or a windfall of relief to one of several employers from liability for its proportionate share of the total compensation properly payable with respect to the employee's permanent partial disability resulting from the work performed for that employer." *Stone v. Lakehead Constructors*, 533 N.W.2d 36, 39–40 (Minn.1995).

Affirmed.

Employee is awarded $400 in attorney fees.

BLATZ, Justice (dissenting).

I respectfully dissent. I would vacate the compensation judge's finding that the employee has sustained an additional 7% permanent partial disability. For injuries occurring before January 1, 1984, apportionment was not allowed when a work-related injury aggravated, accelerated or combined with a nonwork-related, preexisting condition to produce a disability. That was changed, however, by legislation enacted prior to the occurrence of either injury involved in this case. Minn.Stat. § 176.101, subd. 4a.

Minnesota Statutes section 176.101, subd. 4a, which has remained essentially unchanged since its adoption, allows the compensation payable for a permanent partial disability to be reduced by the proportion of the disability attributable to a preexisting disability arising from a congenital condition or traumatic incident. The statute further provides that apportionment of permanent partial disability shall be made only if the preexisting disability is clearly evidenced by a medical report or record made prior to the current personal injury. Here, the medical records clearly evidence a current whole body lumbar spine impairment, a portion of which is due to the 1989 injury. Finally, Minn. Rules 5223.0370, subp. 4C, 5223.0380, subp. 4C and 5223.0390, subp. 4C measure disability to the cervical spine, thoracic spine, and lumbar spine without regard to vertebral disc abnormality at two, three, or even four levels. A condition described as radicular symptoms with objective clinical findings at more than one vertebral level is rated at 10%. If the same symptoms involve a single vertebral level, the rating is 7%.

In this case, the employee suffered a functional impairment after his first injury in 1989. He was under permanent lifting restrictions and received compensation. Under the 1993 disability schedules, permanent partial disability ratings are arranged by functional loss, not by diagnostic criteria. The combination of the law's interest in functional disability to regions of the spine rather than in discrete injuries to vertebral levels of the spine and the clear language of Minn.Stat. § 176.101, subdivision 4a leads to the conclusion that apportionment is appropriate in this case. The fact that the employee's prior condition was not rated is not determinative. As the dissenting WCCA panel member noted, the employee's medical records are available for consideration in determining the proper rating for the 1989 injury. The compensation judge should determine the appropriate rating for the prior injury and reduce the permanent partial disability rating assigned to the current injury by the cumulative permanency previously assigned. *See* Minn. R. 5223.0250, subp. A.

Accordingly, the compensation judge's finding that the employee has a 7% impairment and the award based thereon should be vacated and the matter remanded for application of statutory apportionment.