Stanley L. ROEMHILDT, Respondent,

v.

GRESSER COMPANIES, INC. and, Zurich Insurance Company/Creative Risk Solutions, Relators (A06–1721)–Respondents,

and

Met Con Companies and, State Fund Mutual Insurance Company, Respondents–Relators (A06–1793).

Nos. A06–1721, A06–1793.

Supreme Court of Minnesota.

March 29, 2007.

Jay T. Hartman, Heacox Hartman Mattaini Koshmrl Cosgriff & Johnson, Saint Paul, MN, for Relators.

Mark Chapin Hall, Lynn, Scharfenberg & Associates; Mark G. Olive, Sieben, Grose & Von Holtum, Minneapolis, MN, for Respondents.

## OPINION

HANSON, Justice.

These consolidated appeals are brought by a settling employer and a non-settling employer on issues of contribution. Employee Stanley L. Roemhildt filed a worker's compensation claim against two former employers and their insurers, Met Con Companies, insured by State Fund Mutual Companies (collectively Met Con), and Gresser Companies, insured by Zurich Insurance Company/Creative Risk Solutions (collectively Gresser). Gresser filed a petition for contribution against Met Con. Gresser commenced payment of benefits pursuant to a temporary order. Gresser and employee reached a lump sum settlement of all claims except future medical expenses. The compensation judge found that Met Con was liable to the employee for benefits and that Gresser's settlement with employee was reasonable. The compensation judge awarded Gresser contribution for paid benefits, including the payment of the lump sum settlement. The Workers' Compensation Court of Appeals (WCCA) affirmed the finding that Met Con was liable to employee, but reversed the contribution award, holding that the settlement agreement was not an appropriate basis for contribution. We affirm in part and reverse in part.

On August 17, 2001, employee injured his low back while working for Met Con. On August 23, 2001, Met Con filed a First Report of Injury, and five days later Met Con filed a Notice of Insurer's Primary Liability, accepting liability for employee's work-related injury and agreeing to pay temporary total disability. Met Con voluntarily paid some of employee's medical expenses. On September 18, 2001, Met Con filed a second Notice of Insurer's Primary Liability, denying primary liability, and terminated the payment of benefits to employee.

When employee was laid off from Met Con, he began working for Gresser. While employed at Gresser, employee reported two work-related injuries to his low back: the first occurred on September 7, 2004, and the second on October 4, 2004. Gresser filed a First Report of Injury and Notice of Insurer's Primary Liability, accepting liability for the September and October injuries. A compensation judge entered a temporary order under Minn. Stat. § 176.191, subd. 1 (2006), requiring Gresser to begin paying benefits to employee for temporary total disability.

After being placed on partial restrictions by his doctors, employee returned to work at Gresser until March 2005, when he was

completely unable to work. Employee filed a claim petition seeking various workers' compensation benefits from both Met Con and Gresser. Gresser filed a petition for contribution against Met Con. The claim petition and petition for contribution were consolidated.

Employee's claims were resolved in a mediation, which resulted in a settlement agreement between employee and Gresser. Met Con was invited to join the mediation, but declined. The carefully crafted stipulation for settlement between employee and Gresser stated, among other things, that: (1) employee accepted the lump sum payment as a full, final, and complete settlement of all past, present, or future claims that he might have against Gresser and Met Con, except claims for future medical expenses; (2) Gresser preserved its claim for contribution and reimbursement against Met Con; (3) the settlement did not limit any defense that Met Con may have against employee; (4) Gresser would pay employee a lump sum of $82,500.00; and (5) employee would assign to Gresser all rights he had against Met Con. The settlement was approved by a compensation judge, pursuant to Minn. Stat § 176.521, subd. 2 (2006), and an award based on the settlement was entered.

An evidentiary hearing was then held on Gresser's contribution claim against Met Con. The compensation judge found that: (1) the injury sustained by employee while working at Met Con was work-related, arose out of and in the course of his employment, and was a permanent injury from which the employee never fully recovered; (2) the injuries sustained by employee while working at Gresser were work-related, arose out of and in the course of his employment, and were permanent injuries from which the employee never fully recovered; (3) Gresser was entitled to contribution from Met Con for specified portions of the benefits that Gresser had paid to employee, including the lump sum payments; (4) the specified benefits should be apportioned 50% against Met Con and 50% against Gresser;[1] and (5) Met Con's statute of limitations defense failed because the payments that Met Con had made to employee, before Met Con denied liability, "tolled" the statute.

Met Con appealed. The WCCA affirmed the rejection of Met Con's statute of limitations defense, but reversed on Met Con's liability for contribution, concluding that the settlement could not be enforced against Met Con because Met Con was not a party to the settlement and Met Con could not be required to contribute for benefits that Gresser had paid but that had not yet accrued. *Roemhildt v. Gresser Co. Inc.*, 2006 WL 2646040, at *6, *9 (Minn. WCCA Aug. 23, 2006).

Met Con appealed from the WCCA's decision on the statute of limitations, and Gresser appealed from the WCCA's decision on contribution. Both issues present questions of law, which we review de novo. *Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 735 (Minn.2000).

I.

Met Con argues that, although its initial acceptance of liability and voluntary payment of benefits may have tolled the statute of limitations, that tolling ended

---

1. More specifically, the compensation judge found that: (1) Gresser was 100% liable for benefits paid from September 7, 2004 to January 3, 2005; (2) Gresser was 10% liable for the employee's permanent partial disability— thus 10% of the lump sum amount was solely Gresser's responsibility; and (3) Gresser and Met Con were each 50% liable for the other benefits paid from January 4, 2005 forward.

and the running of the limitations period restarted when Met Con filed a second notice denying liability, more than three years before employee filed his claim.

The statute of limitations contained in Minn.Stat. § 176.151 (2006) provides:

> The time within which the following acts shall be performed shall be limited to the following periods, respectively:
>
> (1) Actions or *proceedings* by an injured employee to determine or recover compensation, three years after the employer has made written report of the injury to the commissioner of the Department of Labor and Industry, but not to exceed six years from the date of the accident.

(Emphasis added.) Because Met Con filed a written report of injury to the Department of Labor and Industry on August 23, 2001, the applicable statute of limitations was three years. If not satisfied, the limitations period would have expired on August 23, 2004. Employee filed his claim petition in October 2004, and Gresser filed its claim for contribution in November 2004, both after that three-year period. But the statute of limitations does not bar those claims if Met Con's earlier payment of benefits constituted "proceedings" that stopped the running of the limitations period.

In *Meinen v. Dashow*, we affirmed a compensation judge's decision that "payments of compensation made by the insurer and the filing of evidence of such payments with the commission constituted a 'proceeding,'" with the consequence that the statute of limitations "has no application." 283 Minn. 269, 271–72, 167 N.W.2d 730, 732 (1969). We held that even though the insurer later filed a denial of liability, that "does not alter the situation" because "we do not see how a change of mind on the part of the employer-insurer could transform acts constituting proceedings before the Workmen's Compensation Com-

mission to something less than that." *Id.* at 272, 167 N.W.2d at 732.

The *Meinen* decision, and the cases it relied on, did not refer to the concept of "tolling," but instead concluded that the commencement of a proceeding within the limitations period makes the statute of limitations thereafter inapplicable to the claim. *See, e.g., Nyberg v. Little Falls Black Granite Co.*, 192 Minn. 404, 406, 256 N.W. 732, 733 (1934) ("To hold otherwise would be to put at a disadvantage the employe[e] who reaches an agreement as to his compensation as compared with one who institutes a controversy."); *Knopp v. Gutterman*, 258 Minn. 33–34, 37, 102 N.W.2d 689, 691, 696 (1960) (holding that the two-year statute of limitations did not bar a claim brought more than three years after the injury because the employer's voluntary payment constituted a "proceeding" that avoids the time limit of the statute). But when the *Meinen* decision was cited with favor in some subsequent cases, the concept of tolling was, perhaps inadvertently, engrafted on it. *See, e.g., Savina v. Litton Indus./Litton Med. Sys.*, 330 N.W.2d 456, 457, 458 (Minn.1983) (holding that voluntary payments "may constitute 'an action or proceeding' * * * that *tolls* the running of [the statute]" (emphasis added)); *Weidemann v. Kemper Ins. Group*, 312 Minn. 157, 160, 251 N.W.2d 117, 119 (1977) (stating that "the payment of medical expenses may be a 'proceeding' that results in *tolling* the statute of limitations" (emphasis added)).

These references to tolling raise the question whether the commencement of a proceeding by an employer's voluntary payments merely suspends the running of the limitations period, so that an employer's later denial of liability restarts the running of the statute. Met Con reads *Meinen* to only recognize a tolling of the statute of limitations and argues that a

subsequent filing of a notice of denial ended the tolling and restarted the running of the limitations period. Met Con also argues that legislative amendments to the Workers' Compensation Act in 1981 and 1983 implicitly overruled *Meinen*. We disagree with these arguments for several reasons.

First, the rationale in *Meinen* was broader than a mere tolling of the limitations period. *Meinen* equated the employer's voluntary payment of benefits to the commencement of an action which, if done within the limitation period, satisfies the statute of limitations and makes it no longer applicable. 283 Minn. at 272, 167 N.W.2d at 732.

Second, there is no reference to tolling in the statute of limitations. In this respect, section 176.151 is unlike statutes in some other states that specifically provide that the voluntary payment of benefits only tolls the limitation period for a specified time after the last payment. *See, e.g.,* Ala.Code § 25–5–80 (1975) (stating that if payments have been made, the period of limitation does not begin to run until the time of the last payment); Fla. Stat. § 440.19 (2006) (stating that the payment of benefits tolls the limitation period for one year from the date of the last payment); Ga.Code Ann. § 34–9–82 (2004) (stating that compensation will be barred unless a claim is made within one year of the date of injury but if payments of weekly benefits have been made, the claim may be filed within one year after the date of the last payment of weekly benefits). If the Minnesota legislature had intended this consequence, it would have used language similar to that used by these other states.

Third, the 1983 amendment to Minn. Stat. § 176.221, subd. 1 (2006) only provided a mechanism for an employer to terminate benefits, after it had commenced payment, by filing a notice of denial of liability within 30 days after notice of injury.[2] *See* Act of June 7, 1983, ch. 290, § 129, 1983 Minn. Laws 1310, 1379. That amendment did not provide that such a denial of liability would have any effect on the statute of limitations nor was any simultaneous amendment made to the statute of limitations.

Fourth, although the 1981 amendments to section 176.221, subd. 1, are perhaps more relevant, they do not change the rule in *Meinen*. They do two things: (1) they shorten the time from 30 to 14 days when compensation must be paid after notice of injury, and (2) they provide that the commencement of payments by an employer does not "waive any rights to any defense." *See* Act of June 1, 1981, ch. 346, § 96, 1981 Minn. Laws 1611, 1672. Met Con argues that the reference to "any defense" includes a statute of limitations defense.

The WCCA's dissenting opinion agreed with Met Con, stating that "by adding the language concerning 'any defense' to Minn. Stat. § 176.221, subd. 1, the legislature intended to allow employers to assert whatever defenses those employers could have asserted but for their timely and voluntary payment of benefits." *Roemhildt*, 2006 WL 2646040, at *6. Although we recognize that the "any defense" language was designed to encourage an employer/insurer to make voluntary payments, even before their investigation was

---

**2.** Met Con may not have satisfied the requirements of the new law because their denial only stated that: "Employee has failed to cooperat[e] with investigation of injury. Employee's current pain complaints are a contin-uation of his personal injury which occurred on approximately 7/15/01." *Cf.* Minn.Stat. § 176.221, subd. 1. But we do not address this issue because the adequacy of Met Con's denial was not challenged.

complete, we conclude that this language is too general to be interpreted as implicitly overruling our longstanding case law on what constitutes a "proceeding" or on the effect that the commencement of a proceeding has on the statute of limitations. The 1981 amendments to section 176.221 were not accompanied by any amendment to the statute of limitations. More specifically, the 1981 amendments did not change the concept of "proceeding" that we relied on to reach our decision in *Meinen*.[3]

As a result, the effect of the 1981 amendments to section 176.221 is that, although the payment of voluntary benefits does not constitute a "waiver" of a statute of limitations defense, the statute of limitations defense may still be invalid for other reasons. Under the present facts, the statute of limitations defense is invalid, not because it was waived, but because it was satisfied before the limitations period expired.

Met Con argues that the denial of the statute of limitations defense under these facts will discourage employer/insurers from making voluntary payments until their investigation is complete, whereas the 1981 amendments were designed to encourage prompt voluntary payments. We note that an employer or insurer who does not begin payment of compensation within the 14 day period provided in section 176.221, subd. 1, is subject to penalties under subdivision 3 of that section, ranging from 30 percent to 105 percent of the compensation due, depending on the length of the delay. These penalties should encourage prompt voluntary payments. In any event, Met Con's policy

arguments are similar to those that we specifically rejected in *Meinen*, where we said:

> [T]hese are matters which should be evaluated by the legislature. We do not feel that we would be justified in rejecting the rationale of the Nyberg case, which has been recognized authority in this jurisdiction for over 30 years.

283 Minn. at 273, 167 N.W.2d at 733. Similarly, we would not be justified in now rejecting the rationale in *Meinen*, which itself has stood for over 30 years.

Finally, Met Con argues that a 1983 amendment that eliminated the Act's remedial nature implicitly overruled *Meinen*, which was decided at a time when we gave liberal construction to the Act. Act of June 7, 1983, ch. 290, § 25, 1983 Minn. Laws 1310, 1324 ("[T]he legislature hereby declares that the workers' compensation laws are not remedial in any sense and are not to be give a broad liberal construction * * *."). But in *Foley v. Honeywell, Inc.*, we concluded that the 1983 amendment did not overrule prior case law, stating:

> The trial court failed to give consideration to our early cases on this issue, concluding that they had been invalidated by the 1983 amendment to the Workers Compensation Act, which eliminated the "remedial nature" of the act, and thus removed the need for a "liberal construction" of the statute. * * * [T]he amendment simply requires that the Act be construed in a non-discriminatory manner. We do not read the 1983 amendment to abolish previous case law, and wish to specifically note its

<hr>

3. The parties have not brought to our attention any legislative history that would support the conclusion that the legislature intended to address *Meinen* in its 1981 amendments. In *Wagner v. Farmer's Union Central Exchange*, we reviewed the 1981 amendments, but did not acknowledge any legislative intent to

modify *Meinen*. 329 N.W.2d 801, 802–04 (Minn.1983). We said that the purpose of the 1981 amendments "was to decrease the time for payment of benefits to injured workers" in order to decrease litigation and lower insurance rates. *Id.* at 802.

continued validity, except, of course, where overruled by this court or altered by the legislature.[4]

488 N.W.2d 268, 271 n. 2 (Minn.1992) (footnote added).

■ Because the "any defense" clause in section 176.221 can be reconciled with the decision in *Meinen*, by concluding that the voluntary payment of benefits does not "waive" a statute of limitations defense but does commence a "proceeding" that makes the statute of limitations defense inapplicable, there is no basis to conclude that the "any defense" clause implicitly overrules *Meinen*. We affirm that portion of the WCCA's opinion holding that Met Con's statute of limitations defense fails.

## II.

The WCCA majority reversed the compensation judge's award of contribution, based primarily on the fact that Met Con was not a party to the settlement: "Because Met Con was not a party to the settlement, the reasonableness of the settlement between the employee and Gresser is simply irrelevant to Met Con's liability." *Roemhildt*, 2006 WL 2646040, at *9. The majority also said that nothing in the Act "would allow a compensation judge to compel a party to pay benefits in the absence of proof that such benefits are presently due and actually payable." *Id.*

### A. The Use of Common Law Principles of Contribution in Workers' Compensation Cases

Long before contribution or apportionment was expressly recognized in the Act, we applied common law principles of contribution in worker's compensation cases. *Silva v. Maplewood Care Ctr.*, 582 N.W.2d 566, 568 (Minn.1998) ("In Minnesota, common law principles of equitable apportionment have long been applied to permit apportionment between insurance carriers when two or more successive injuries combine to produce the final disability."). We first recognized the authority of a compensation judge to apportion liability among successive insurers for injuries occurring under the same employment, and then we concluded that the natural extension of that reasoning was that a compensation judge had authority to allow an employer to seek contribution from another employer for compensation arising out of injuries occurring under each employment. In *Haverland v. Twin City Milk Producers Ass'n*, we summarized our reasoning as follows:

> "[W]e have approved apportionment of liability for disability resulting from successive accidents under the same employer between two insurers, one of whom represented the employer at the time of the first accident and the other of whom represented him when the second occurred. *Carpenter v. Arrowhead Steel Products Co.*, 194 Minn. 79, 259 N.W. 535; *Peniston v. City of Marshall*, 192 Minn. 132, 255 N.W. 860."

It appears reasonable that, if liability for compensation arising from two or more industrial accidents under the same employer may be apportioned between his successive insurers, it should likewise be apportionable between successive employers where industrial accidents are sustained under each of them,

---

4. We reaffirmed this "even-handed approach" in *O'Malley v. Ulland Brothers*, 549 N.W.2d 889, 894 (Minn.1996) ("We hold that the even-handed standard is the correct standard to apply in determining questions of law under the Act. The even-handed standard permits the Act to be construed to yield reasonable results consistent with prior decisions of this court and with the legislative intent of section 176.001—that is to say, that the Act shall be construed in a nondiscriminatory fashion.")

both of which contribute to the disability of the employee.

\* \* \* \*

\* \* \* [W]e think of no reason why the last employer held primarily liable for the compensation under such circumstances should not have the right to seek proportionate contribution from a former employer under whom the employee sustained an industrial accident which created his physical impairment and which contributed to his final disability.

273 Minn. 481, 488–90, 142 N.W.2d 274, 280 (1966) (citation omitted).

Likewise, in *DeNardo v. Divine Redeemer Memorial Hospital,* we confirmed that we have used the concept of apportionment to support contribution among successive employers. 450 N.W.2d 290, 292–93 (Minn.1990). We said:

Common law principles of equitable apportionment have long been applied to require successive employers and successive insurers each to contribute their proportionate share of the total responsibility for temporary total and temporary partial disability benefits. The same principles of equitable apportionment also have been applied to allocate responsibility for payment of permanent partial disability ("PPD") benefits between successive employers or successive insurers when benefits are awarded on the basis of a single permanency rating of the disability resulting from more than one compensable injury.

*Id.* at 292 (citations omitted).

These common law principles of contribution have been regularly applied by the WCCA. For example, in *Niemi v. Mesabi Drill Operations,* the employee and all but one employer, Mesabi Drill, reached a settlement. 45 Minn. Workers' Comp. Dec. 348, 350–51 (WCCA), *aff'd without opinion,* 476 N.W.2d 895 (Minn.1991). The settling employers then filed a claim for contribution against Mesabi Drill. *Id.* at 351. The WCCA affirmed the decision of the compensation judge that the employee's injury at Mesabi Drill "was a substantial contributing factor in her total disability and [that] 1/6th of the responsibility for that disability" should be apportioned to the Mesabi Drill injury. Id. at 352–54. And in *Masters v. Moorhead Construction Co.,* the WCCA concluded that the settling insurer's contribution claims against a nonsettling insurer were not barred, stating that to hold otherwise would bar claims for contribution that were specifically authorized by the Act and were recognized under the common law principles of equitable apportionment. 47 Minn. Workers' Comp. Dec. 432, 437 (WCCA 1992).

It perhaps could have been argued in *Haverland* that the worker's compensation laws are purely statutory and there is no legal basis to import common law principles into those laws. But we decided otherwise in *Haverland,* and we confirmed that decision in *DeNardo* and *Silva.*

In the 40 years since *Haverland,* the legislature has acquiesced in this judicial application of contribution principles in worker's compensation cases and has not enacted any substantive changes to those principles. It is not that the legislature was inattentive to these issues because, although it has not made substantive changes, it has enacted procedural limitations on the availability of contribution under the Act. In 1995, apparently in response to the growing number of contribution claims, it amended section 176.191 to add subdivision 1a, providing that "[e]quitable apportionment of liability for any injury under this chapter is not allowed" in proceedings before a worker's compensation judge, but only in settlement agreements or in arbitration. *See* Act of May 25, 1995, ch. 231, art. 2, § 77, 1995 Minn. Laws 1977, 2056–58. But in

1997, the legislature relaxed that procedural restriction by amending section 176.191, subd. 1, to specifically authorize compensation judges to consider contribution claims once a temporary order had been issued that required one employer to commence payment of benefits. *See* Act of May 9, 1997, ch. 128, § 4, 1997 Minn. Laws, 854, 856; *see also Silva*, 582 N.W.2d at 569.

### B. Met Con's Objections to Contribution

With this background in mind, we turn to Met Con's specific objections to the use of the Gresser settlement as the basis for an award of contribution against Met Con.

#### 1. Met Con was not a party to the settlement agreement.

Met Con argues, and the WCCA majority agreed, that Met Con cannot be liable for contribution because it was not a party to the Gresser settlement. But, under the common law of contribution, the fact that one of the liable persons was not a party to a settlement is not an obstacle to contribution. " 'Contribution is the remedy securing the right of one who has discharged more than his fair share of a common liability or burden to recover from another who is also liable the proportionate share which the other should pay or bear. Contribution rests upon principles of equity.' " *Lambertson v. Cincinnati Welding Corp.*, 312 Minn. 114, 123, 257 N.W.2d 679, 685–86 (1977) (quoting *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 370, 104 N.W.2d 843, 846 (1960)). And a party who seeks contribution "need not make payment pursuant to a judgment, but may settle by a fair and provident payment and then seek contribution from other joint tortfeasors for their fair share of the settlement price." *Employers Mut. Cas. Co., v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 235

Minn. 304, 309, 50 N.W.2d 689, 693 (1951). Thus, Met Con's argument that it should not be liable for contribution because it was not a party to the settlement fails.

#### 2. Met Con did not have an opportunity to litigate directly with employee.

Met Con argues that it was denied due process because it was entitled to a hearing to defend against employee's claims on the merits. We agree that " '[b]asic fairness requires that the parties in a workers' compensation proceeding be afforded reasonable notice and an opportunity to be heard before decisions concerning entitlement to benefits can be made.' " *Manderfeld v. J.C. Penney*, 526 N.W.2d 52, 54 (Minn.1995) (quoting *Kulenkamp v. Timesavers, Inc.*, 420 N.W.2d 891, 894 (Minn. 1988)). But the Gresser settlement did not purport to establish Met Con's liability to employee. Instead, Met Con had a full opportunity to defend against liability to employee during the evidentiary hearing on Gresser's contribution claim.

Met Con did present its defenses to any liability to employee by asserting a statute of limitations defense, providing an adverse medical evaluation of employee, cross-examining employee, and raising other legal challenges. In fact, Met Con had the opportunity to both defend against its underlying liability to employee (i.e., to prove that employee's 2001 injury was not permanent or did not contribute to his current disability or that employee's claim was procedurally barred) and to defend against Gresser's claim of contribution (i.e., to prove that the settlement was not reasonable because the employee was not disabled or the settlement exceeded the amount the employee was likely to recover in benefits). These opportunities satisfied Met Con's rights to due process.

### 3. The lump sum settlement included payment for benefits that have not yet accrued.

 This brings us to the issue of whether a non-settling employer/insurer can be required to contribute to a lump sum settlement that includes payment for benefits that have not yet accrued. Met Con argues that the compensation judge has no jurisdiction to award benefits that have not accrued on the date of the hearing. The WCCA majority agreed—stating that nothing in the Act "would allow a compensation judge to compel a party to pay benefits in the absence of proof that such benefits *are presently due and actually payable.*" *Roemhildt*, 2006 WL 2646040, at *8 (emphasis added). Essentially, compensation benefits are due and payable "as nearly as possible * * * when the wage was payable." Minn.Stat. § 176.021, subd. 3 (2006).

Because we have rejected Met Con's statute of limitations defense, and Met Con did not appeal the compensation judge's findings that Met Con was liable to employee or that specified benefits should be apportioned on a 50/50 basis, Met Con's general liability to Gresser for contribution is established. The only question is when that liability may be enforced—whether currently, based on Gresser's lump sum settlement of future benefits, or in the future as each underlying benefit accrues. In essence Met Con claims the right to delay payment of its share of the benefits until each benefit accrues, so that Met Con may take advantage of the possibility that some event might occur that would terminate or reduce employee's benefits sooner than was contemplated by the lump sum settlement.

The WCCA dissent correctly points out that the majority's view would require Gresser to "serially assert multiple contribution claims against Met Con for the accrued benefits to which the employee would have been entitled but for the settlement." Id. at *11 (Johnson, J., dissenting). This process would be inefficient and it overlooks the effect of the settlement, which completely resolved the employee's claims for the whole array of possible benefits, including temporary total and permanent total disability, temporary partial and permanent partial disability, rehabilitation benefits, and retraining benefits. The WCCA dissent also correctly concludes that the decision of the WCCA majority would subvert the principles of equitable apportionment and discourage settlements. *Id.* at * 11–12 (Johnson, J., dissenting).

 Although these concerns provide good policy reasons why a compensation judge should be given jurisdiction to award contribution based on a settlement that includes future benefits, the question before us is whether common law principles of contribution, as procedurally limited by the Act, do provide that authorization. We conclude that a compensation judge does have jurisdiction to award contribution based on a settlement that includes future benefits. That jurisdiction is based on the combination of the compensation judge's authority to apply common law principles of contribution and the specific legislative authorization for a compensation judge to hear and resolve all issues raised by a settling employer who has paid benefits under a temporary order and has petitioned for a determination of the liability of any other employer. That jurisdiction is reinforced by the statutory authorization of a compensation judge to approve settlements that include future benefits and to commute an employer's liability for future benefits into a lump sum amount.

 Under common law principles of contribution, a settlement that reflects the present value of future damages can be the basis for a contribution claim. *See, e.g.,*

*Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn.1982). The only question is whether the settlement is reasonable (i.e., is there a sufficient risk of liability for the future damages and is the settlement a fair estimate of the present value of those damages). *Id.*; *see also Samuelson v. Chicago, Rock Island & Pac. R.R. Co.*, 287 Minn. 264, 268–69, 178 N.W.2d 620, 624 (1970). Thus, unless the legislature has limited this application of common law principles of contribution for workers' compensation cases, the Gresser settlement is an appropriate basis on which to order contribution. We conclude that the legislature has not limited this application of common law principles of contribution but, instead, has specifically authorized a compensation judge to apply them in the circumstances that are presented here.

First, the Act provides broad authority for a compensation judge to award contribution after a temporary order has been issued. As noted above, although the 1995 amendments to section 176.191 eliminated a compensation judge's authority to award contribution, the 1997 amendment to the Act reinstated that authority by providing:

> At any time after a temporary order is issued, the paying party may also petition for a formal hearing before a compensation judge for a determination of liability among the parties. * * * *The compensation judge shall have jurisdiction to resolve all issues properly raised, including equitable apportionment.*

Minn.Stat. 176.191, subd. 1 (2006) (emphasis added). This provision does not distinguish between cases where the temporary order was based on a settlement with the employee and cases where the order was based on a contested hearing.

In this case, a compensation judge entered a temporary order requiring Gresser

to commence payments of benefits to employee. That order also provided:

> IT IS FURTHER ORDERED that following a final determination of liability and if it has been determined that some other employer or insurer is liable for all or part of the compensation paid pursuant to this Temporary Order, then the Workers' Compensation Division, a compensation judge, or the Workers' Compensation Court of Appeals shall order the parties held liable to reimburse Gresser Companies and Zurich Insurance for that part of the compensation paid under this Temporary Order, for which the other parties are held liable, including interest at the rate of 12% per year.

Because that temporary order was issued, the compensation judge had complete authority to consider Gresser's claim for contribution.

Second, Minn.Stat. § 176.521, subd. 2 (2006), reinforces this conclusion because it specifically authorizes a compensation judge to approve a settlement that "purports to be a full, final, and complete settlement of an employee's right to medical compensation under this chapter or rehabilitation under section 176.102." This section necessarily contemplates that a compensation judge may approve a lump sum settlement that includes the present value of benefits likely to accrue in the future, such as rehabilitation benefits. In fact, this section provides that such settlements are not valid unless approved (either by a compensation judge, the commissioner, or the WCCA). *Id.* And it authorizes a compensation judge to "exercise discretion in approving or disapproving a proposed settlement." *Id.* In this case, a compensation judge did approve the Gresser settlement under section 176.521, finding that it was

reasonable, fair, and in conformity with the Act.[5]

Third, Minn.Stat. § 176.165 (2006) authorizes a compensation judge to commute periodic payments to a lump sum payment, on such terms and conditions as the compensation judge prescribes:

> The amounts of compensation payable periodically may be commuted to one or more lump sum payments * * *. In making these commutations the lump sum payments shall amount, in the aggregate, to a sum equal to the present value of all future installments of the compensation calculated on a five percent basis.

In fact, this section authorizes a compensation judge to order a lump sum payment even where the parties have not reached any settlement on that lump sum. We cannot think of any reason why a compensation judge's authority should be any less where the lump sum amount is specified in a settlement, so long as the compensation judge finds that settlement to be reasonable under common law principles of contribution.[6]

We conclude that these statutory provisions, taken together, provide the compensation judge with jurisdiction to apply common law principles of contribution to a lump sum settlement that includes future benefits. Our conclusion is supported by the prior decisions of the WCCA that have affirmed awards of contribution in such circumstances. The WCCA decisions in *Niemi* and *Masters* each involved settlements that included lump sum payments to resolve an employee's claims for future benefits. *Masters*, 47 Minn. Workers' Comp. Dec. at 434; *Niemi*, 45 Minn. Workers' Comp. Dec. at 351. Although the legislature limited the applicability of these decisions with its 1995 amendments, it effectively reinstated those decisions, for cases where a temporary order has been issued, with its 1997 amendment.

We hold that Gresser is entitled to recover contribution from Met Con for the lump sum settlement, including contribution for the payment by Gresser of future benefits. Accordingly, we reverse that portion of the decision of the WCCA and reinstate the award of the compensation judge.

Affirmed in part, reversed in part.

MEYER, J., took no part in the consideration or decision of this case.

---

5. Even settlements that do not meet the qualifications for approval under section 176.521, subd. 2, require some action by a compensation judge because they cannot become effective until they have been confirmed in an award entered under section 176.521, subd. 2a.

6. Met Con's argument, that it should be able to delay payment on the possibility that the actual accrued benefits may turn out to be less than estimated by the lump sum settlement, was properly considered in the contribution hearing as part of the determination of whether the Gresser settlement was reasonable. Met Con was free to argue that the settlement was not reasonable because the lump sum amount overestimated the projected stream of benefits that employee would likely recover. The compensation judge rejected that argument, and Met Con did not appeal from the finding that the settlement was reasonable.