Donna SILVA, Respondent,

v.

MAPLEWOOD CARE CENTER and Minnesota Health Care Association/GAB Robins, Inc., Relators,

and

Beverly Enterprises, d/b/a Greeley Healthcare Center and Insurance Company of the State of Pennsylvania/Constitution State Service Company, Respondents.

No. C5–97–1282.

Supreme Court of Minnesota.

Aug. 13, 1998.

George W. Kuehner, Shari L. Johnson, Jardine, Logan & O'Brien, St. Paul, for relator.

Donna Silva, Coon Rapids, pro se.

Richard C. Nelson, Christine L. Tuft, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, for respondents.

## OPINION

PAUL H. ANDERSON, Justice.

Minnesota Statutes section 176.191 was amended in 1995 to provide that equitable apportionment of liability for an injury under this section is not allowed but for certain limited exceptions for settlement and arbitration. The amendment to section 176.191 was made effective for apportionment proceedings instituted after July 1, 1995. The issue we must decide is whether the 1995 amendment to section 176.191 that applies to equitable apportionment proceedings instituted after July 1, 1995—a Saturday—governs a petition for equitable apportionment that was mailed on Thursday, June 29, 1995, but was not received and filed by the Department of Labor and Industry (DLI) until the following Monday, July 3, 1995. A compensation judge dismissed the petition on the grounds that the 1995 amendment divested the compensation judge of jurisdiction over this matter. The Workers' Compensation Court of Appeals (WCCA) reversed the decision of the compensation judge. Concluding that the 1995 amendment does not apply here, we affirm the WCCA.

Respondent Donna M. Silva sustained two work-related back injuries while working for two different employers. The first injury occurred in July 1993 while Silva was working as a nursing assistant for relator Maplewood Care Center, which was insured for workers' compensation liability by relator Minnesota Health Care Association/GAB Robins, Inc. (Maplewood). Silva sustained her second back injury in September 1994 while working as a nursing assistant for respondent Beverly Enterprises, d/b/a Greeley Healthcare Center, which was insured for workers' compensation liability by respondent Insurance Company of the State of Pennsylvania/ Constitution State Service Company (Greeley). Greeley admitted liability for this second injury and paid more than $33,574.27 in various workers' compensation benefits to Silva.

Greeley petitioned for contribution and reimbursement from Maplewood, alleging that "a substantial portion, if not all, of the indemnity benefits and medical expenses [it] paid" on Silva's behalf were attributable to the July 1993 injury. Greeley's attorneys mailed the petition on or about Thursday, June 29, 1995, and the petition was received and filed by the Workers' Compensation Division of DLI on Monday, July 3, 1995. Maplewood filed an answer in which it denied liability and contended that the payments for which Greeley sought reimbursement were "unreasonable, unnecessary, excessive, and unrelated to any injury sustained during [Silva's] employment" with Maplewood.

Following a prehearing conference, a compensation judge dismissed Greeley's petition without prejudice, concluding that Minn.Stat.

§ 176.191 as amended and made effective after July 1, 1995 provided arbitration as the exclusive remedy available to employers and insurers for resolution of disputes in contribution actions. The judge therefore determined that the amendments to the statute divested the Office of Administrative Hearings of jurisdiction over this matter. The judge rejected Greeley's claim that, because July 1, 1995 fell on a Saturday, the amendments should not apply to a petition mailed before July 1 but received and filed by DLI on Monday, July 3. Greeley's only recourse, according to the compensation judge, was to pursue its claim through arbitration.

On appeal, the WCCA reversed. Relying on its decision in *Schmoll v. Washington Scientific Indus., Inc.*, 55 Workers Comp. Dec. 530 (Minn. Workers' Comp. Ct.App. 1996), the WCCA held that an arbitrator's role under section 176.191 is limited to determining the percentage of equitable apportionment attributable to each employer and insurer *only after* liability has been admitted or a compensation judge has decided whether the earlier injury substantially contributed to the subsequent disability. The WCCA did not address whether the 1995 amendment to section 176.191 governs Greeley's petition, and remanded the matter to the Office of Administrative Hearings for further proceedings. Maplewood then petitioned to this court for a writ of certiorari.

■ Workers' compensation laws are designed to provide a comprehensive system for compensating injured employees regardless of fault or negligence. Strict liability is imposed on the employer, and the employee's recovery is limited to a fixed schedule. *See Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 120–21, 257 N.W.2d 679, 684 (1977). The law evolved such that an employer takes an employee with whatever preexisting maladies he or she may have. *See, e.g., Gillette v. Harold, Inc.*, 257 Minn. 313, 322, 101 N.W.2d 200, 207 (1960). Consequently, "[w]hen a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire com-

pensation." 9 Arthur Larson & Lex K. Larson, *Larson's Workers Compensation Law*, § 95.00 (1998); *see also Michels v. American Hoist & Derrick*, 269 N.W.2d 57, 59 (Minn. 1978) (holding that employee is entitled to prompt payment of full benefits when employment immediately preceding total disability contributed to the disability). The harshness for insurers of this policy of requiring that a single insurer assume the entire cost of any single injury has been tempered in Minnesota and other jurisdictions by a practice that permits apportionment between two carriers when two successive injuries combine to produce the final disability. Larson & Larson, *supra*, § 95.31.

In Minnesota, common law principles of equitable apportionment have long been applied to permit apportionment between insurance carriers when two or more successive injuries combine to produce the final disability. We have required successive employers and their insurers each to contribute their proportionate share of the total responsibility for wage loss benefits when those benefits had been awarded on the basis of a single permanency rating of the disability resulting from more than one compensable injury. *See, e.g., DeNardo v. Divine Redeemer Mem. Hosp.*, 450 N.W.2d 290, 292 (1990) (providing for equitable apportionment of wage loss benefits). *See also Goetz v. Bulk Commodity Carriers*, 303 Minn. 197, 199–200, 226 N.W.2d 888, 890 (1975) (providing equitable apportionment of disability and medical expenses). In 1995, however, the legislature amended Minn.Stat. § 176.191 to add subdivision 1a, which provides that "[e]quitable apportionment of liability for an injury under this chapter is not allowed," with certain exceptions for settlement and arbitration. Subdivision 1a applies to all injuries except occupational diseases, in which case Minn. Stat. § 176.66 continues to allocate liability in multiple employer/insurer cases. *See* Minn. Stat. § 176.66 (1996).

Under section 176.191, subdivision 1a, employers and their insurers in a successive injury case may stipulate to an apportionment of liability. Alternatively, under subdivision 5, also added in 1995, they may compel arbitration if $10,000 in medical benefits or

52 weeks worth of indemnity benefits have been paid. The request for this arbitration must be made within one year after the payment of the threshold amount. Minn. Stat. § 176.191, subd. 5. The decision of the arbitrator is "conclusive" on the allocation of liability among employers and their insurers. Subdivisions 1a and 5 of the amended section 176.191 "are effective for apportionment proceedings instituted after July 1, 1995," Act of May 25, 1995, ch. 231, art. 2, § 112, 1995 Minn. Laws 1977, 2072.

■ Greeley asserts that because July 1, 1995 fell on a Saturday, the following Monday, July 3, should be deemed to be the effective date of the amendments to section 176.191. In support of its position, Greeley cites to Minn. R. Civ. P. 6.01, which states:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, *unless it is a Saturday, a Sunday, or a legal holiday, * * * in which event the period runs until the end of the next day which is not one of the aforementioned days.*

(Emphasis added.) This rule clearly provides that if the last day of a period runs on a Saturday, Sunday, or legal holiday, the period is extended to the next day that is not a Saturday, Sunday, or legal holiday. *Id.* The compensation judge rejected Greeley's argument, contending that the workers' compensation statute is less flexible than the rules of civil procedure. However, there is nothing in the statute or cases interpreting the statute that prohibits the application of the rules of civil procedure or, in particular, Minn. R. Civ. P. 6.01. In fact, the WCCA has held that "Minnesota Rules of Civil Procedure 6.01 governs computation of time for service and filing." *Stordahl v. Northern Hydraulics,* No. 476–82–1959, 1993 WL 491338, at *3 (Minn. Workers' Comp. Ct.App. Oct. 27, 1993).

Here, the last day for proceeding under an apportionment system that had been in place for some 60 years fell on a Saturday. Gree-ley's claim, received and filed at the close of the next business day, ought to proceed in that system. To hold otherwise would contradict what has long been recognized as a normal expectation in the practice of law and would cause the unintended result of Greeley being denied the ability to proceed with its petition. We reach this conclusion in light of Minn. R. Civ. P. 6.01, bearing in mind that the legislature does not intend to exact a result "impossible of execution," Minn.Stat. § 645.14 (1996), and that "[s]tatutes prescribing a relatively short period of time for outlawing an action are usually construed narrowly to the extent necessary in order to give the owner of a cause of action a fair opportunity to prosecute his claim," 3A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* (5th ed.1992). Moreover, we do not believe that this result is unduly burdensome in light of the 1997 amendments allowing resolution of equitable apportionment disputes within the existing litigation system in limited circumstances involving temporary orders. Act of May 9, 1997, ch. 128, § 4, 1997 Minn. Laws 854, 856–57. Therefore, we hold that the 1995 amendment pertaining to equitable apportionment does not apply to Greeley's petition.

Having concluded that the 1995 apportionment legislation does not apply to Greeley's petition, we decline to reach the remaining issues.

Affirmed.

TOMLJANOVICH, Justice (dissenting).

This court has the inherent and statutory authority to promulgate rules regulating pleadings and procedure in the courts of this state. *See* Minn.Stat. § 480.051 (1996); *State v. Willis,* 332 N.W.2d 180, 184 (Minn. 1983). However, the majority's strained application of a rule of civil procedure to an administrative proceeding raises, in my view, serious concerns about the separation of powers, while skirting the important constitutional issue before us. I respectfully dissent.

Long ago, this court acknowledged that the legislature could delegate quasi-judicial power over workers' compensation matters

to an administrative body. *See Breimhorst v. Beckman,* 227 Minn. 409, 431–433, 35 N.W.2d 719, 732–34 (1949). Along with the power to enact such enabling legislation, the legislature possesses the power to determine when it becomes effective. *See* 2 Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 33.07 (5th ed. 1993) ("The power to enact laws includes the power to fix a future effective date."). Our job, as we recently stated, "is to ascertain and effectuate legislative intent. We presume that plain and unambiguous statutory language manifests legislative intent. If statutory language is plain and unambiguous, the court must give it its plain meaning." *In re Welfare of J.M.,* 574 N.W.2d 717, 721 (Minn. 1998) (citations omitted). "[T]he letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1996).

I am unpersuaded by the majority's reliance upon Minn. R. Civ. P. 6.01. Minnesota courts have applied Rule 6.01 only when it is necessary to compute the passage of time. *See, e.g., Wertish v. Salvhus,* 558 N.W.2d 258, 258 (Minn.1997) (applying Minn. R. Civ. P. 6.01 to statute that required motion to be filed within ten days of the verdict's entry).[1] If the Workers' Compensation Act, Minn. Stat. ch. 176 (1996), were silent as to when an apportionment proceeding is instituted, it might be permissible for this court to borrow from its rules of civil procedure in an effort to effectuate the legislature's intent. However, in this case, the legislature plainly and unambiguously provided that the 1995 amendment to Minn.Stat. § 176.191 became "effective for apportionment proceedings instituted after July 1, 1995." Act of May 25, 1995, ch. 231, art. 2, § 112, 1995 Minn. Laws 1977, 2072.[2] The Act also plainly and unambiguously states that "all proceedings under this chapter are initiated by the filing of a written petition * * * with the commissioner," Minn.Stat. § 176.271, subd. 1 (1996), and that "filing" is "completed by the receipt of the document at the * * * department," *id.* § 176.275, subd. 1 (1996). The legislature established a date certain, one which does not require us to "compute a period of time" using Minn. R. Civ. P. 6.01 or any other rule promulgated by this court.[3]

Maplewood's claim for contribution and/or reimbursement was not received until Monday, July 3, 1995; thus, under the Workers' Compensation Act, its equitable contribution proceeding was not initiated until that date. The majority fails to explain why a proceeding that was "initiated" on July 3, within the meaning of section 176.271, was not "instituted after July 1," within the meaning of the 1995 amendment. Surely the word "after" is not ambiguous. *Cf. Parkinson v. Brandenburgh,* 35 Minn. 294, 296, 28 N.W. 919, 920 (1886) (interpreting an act which provided that it took effect "from and after" the date of passage; holding that the phrase excluded the day the act was passed). I would hold that Maplewood's petition is subject to the 1995 amendment.

---

1. Likewise, computation of a time period was necessary in the workers' compensation case cited by the majority. In *Stordahl v. Northern Hydraulics,* the Workers' Compensation Court of Appeals' rules specified that appellants' briefs must be filed 30 days after the court received transcripts. *See* No. 476–82–1959, 1993 WL 491338, at *3 (Minn. Workers' Comp. Ct.App. Oct. 27, 1993). However, in the employee-appellant's case, the thirtieth day fell upon a Sunday, and the employee-appellant filed his brief the following day, Monday. *See id.* Because its rules were silent on the issue, the Workers' Compensation Court of Appeals applied Minn. R. Civ. P. 6.01 and held that the brief was filed timely. *See id.*

2. Contrary to the majority's assertion, application of the 1995 amendment would not "den[y] [Greeley] the ability to proceed with its petition."

It would merely change the manner in which Greeley proceeds.

3. In applying Minn. R. Civ. P. 6.01 to this matter, the majority has overlooked a rule that is far more analogous to the case before us: Under our rules of civil procedure, a civil action is "commenced" by service of a summons, but when the summons is served by mail, the action does not "commence" until service is acknowledged. Minn. R. Civ. P. 3.01(b). Surely the institution of an equitable apportionment proceeding is more akin to the commencement of a civil action than the filing of a responsive pleading. Under rule 3.01(b) and Minn.Stat. §§ 176.271 and 176.275, the proceeding could not have been commenced or instituted any sooner than July 3, the earliest opportunity the department had to acknowledge its receipt of Maplewood's petition.

In its haste to dispose of this appeal, the majority has failed to address the more significant issues presented: whether the arbitration provisions of the 1995 amendment permit an arbitrator to make the legal determination of whether an earlier injury substantially contributed to the later injury, and whether the arbitrator's decision is "conclusive on the issue of apportionment" to the extent that there is no right of appeal. I would hold that arbitrators may decide the contribution issue, and I would interpret the arbitration provision so as to preserve judicial review of arbitrators' decisions.

The 1995 amendment to section 176.191 in no way limits an arbitrator's power to determine whether the earlier injury substantially contributed to the later injury. "Generally, * * * arbitrators are the final judges of both law and fact." *Johnson v. American Family Mut. Ins. Co.,* 426 N.W.2d 419, 421 (Minn. 1988). In only one circumstance—automobile reparation—have we held that an arbitrator is limited to deciding fact issues, and even in that case we stated that it was within the power of the arbitrator, as factfinder, to find a party negligent. *See id.* at 421–22. In contrast to automobile reparation, an arbitrator making a substantial contribution determination needs only to apply the statute, not interpret it. I see no reason why this determination, like a finding of negligence, cannot be made by an experienced arbitrator.

Whether the 1995 amendment violates due process presents a closer question. The amendment's reference to the "conclusive" effect of an arbitrator's equitable apportionment determination is difficult to square with past statements of this court. We have stated before that "[d]ue process requires notice before judgment and an opportunity to be heard in an orderly proceeding adapted to the nature of the case, *and the right of appeal from or review of a decision regarded by a litigant as unjust.*" *Hunter v. Zenith Dredge Co.,* 220 Minn. 318, 326, 19 N.W.2d 795, 799 (1945) (emphasis added); *cf. Breimhorst,* 227 Minn. at 433, 35 N.W.2d at 734 (holding that the separation of powers was not violated by the legislature's delegation of quasi-judicial powers to the predecessor of DLI "as long as the commission's awards and determinations [were] not only subject to review by certiorari, but lack[ed] judicial finality" absent the entry of judgment by a court). Consistent with our earlier decisions, I would hold that the 1995 amendment preserves the right of judicial review and merely codifies, by use of the word "conclusive," the deferential standard we ordinarily have employed in reviewing arbitrators' decisions. *See, e.g., State v. Minnesota Ass'n of Prof'l Employees,* 504 N.W.2d 751, 754–55 (Minn. 1993) ("Every reasonable presumption must be exercised in favor of the finality and validity of [an] arbitration award.").

STRINGER, Justice (dissenting).

I join in the dissent of Justice Tomljanovich.