Henry A. PETERSON, Respondent,

v.

O.R. ANDERBERG CONSTRUCTION and CIGNA Insurance Company, Relators,

Northland Maintenance Corporation and Western National Mutual Insurance Company, Respondents.

No. C7–97–2174.

Supreme Court of Minnesota.

Nov. 25, 1998.

Deborah K. Sundquist, Lawrence J. Hayes, Jr. & Assoc., Eagan, for relator.

Jeffrey W. Jacobs, Bloomington, for respondent Peterson.

T. Michael Kilbury, Larry J. Peterson & Associates, St. Paul, for respondents Northland Maintenance Corp. and Western Nat'l Mut. Ins. Co.

Hubert H. Humphrey III, Atty. Gen., Susan Caroline Gretz, Asst. Atty. Gen., St. Paul, amicus curiae.

## OPINION

LANCASTER, Justice.

This workers' compensation matter comes before this court by certiorari on the relation of O.R. Anderberg Construction Company and its workers' compensation liability insurer, CIGNA Insurance Company, to review a decision of the Workers' Compensation Court of Appeals (WCCA) affirming an equitable allocation of liability. Concluding that Minn. Stat. § 176.191, subds. 1a and 5 did not deprive the compensation judge of jurisdiction over the equitable allocation dispute, we affirm.

On July 17, 1980, Henry Peterson sustained a compensable low back injury while employed as a union carpenter for O.R. Anderberg Construction. Anderberg and its workers' compensation liability insurer CIGNA (collectively Anderberg) accepted liability and paid various benefits, including 86.6 weeks of wage loss benefits. In March 1982, Peterson settled his claim for permanent partial disability benefits, and in May 1984, he settled additional claims, including wage loss and rehabilitation benefits, through May 25, 1988.

As a result of the 1980 work injury, Peterson could not obtain medical authorization to work without restrictions and was therefore unable to resume work as a union carpenter. However, in 1984 or 1985, he obtained similarly strenuous work as a millwright with Northland Maintenance Corporation. On May 11, 1994, Peterson reinjured his back at work. Northland and its workers' compensation insurer Western National Mutual Insurance Company (collectively Northland) accepted liability and paid various benefits, including $50,989.14 in wage loss benefits and $20,565.83 in medical benefits.

In February 1996, Northland initiated proceedings to resolve a dispute over Peterson's post-injury earning capacity. Peterson then filed a claim for temporary partial and permanent partial disability benefits, naming both Anderberg and Northland as parties. Northland's answer asserted, among other things, the right to contribution and/or reimbursement from Anderberg for the benefits Northland had already paid. Anderberg denied liability.

At a preliminary hearing, Anderberg moved to dismiss the contribution/reimbursement claim, contending that where all issues except those raised by the contribution/reim-

bursement claim had been resolved, the compensation judge no longer had jurisdiction because the 1995 amendments to Minn.Stat. § 176.191 required arbitration of apportionment disputes. The compensation judge denied Anderberg's motion, and the matter proceeded to hearing in April 1997. Relevant evidence included a report from Northland's medical consultant who apportioned Peterson's disability and need for medical care following the 1994 injury at 75% to the 1980 Anderberg work injury and 25% to the 1994 Northland work injury. Anderberg presented two reports from its medical consultant. In the first report, the medical consultant allocated responsibility 40% to the 1980 injury and 60% to the 1994 injury. In the second, a supplemental report, the medical consultant allocated all responsibility between the date of injury and maximum medical improvement (MMI) to the 1994 injury; disability and medical care after MMI was allocated by the 60–40 ratio. The compensation judge allocated 40% of the liability to Anderberg, 60% to Northland, and ordered Anderberg to reimburse Northland accordingly. On appeal the WCCA affirmed, rejecting Anderberg's contention that the compensation judge lacked jurisdiction over the apportionment claim.

■ In Minnesota, application of common law principles of equitable apportionment has long tempered the potential harshness of the requirement that the insurance carrier covering the risk at the time of the most recent injury must assume the entire cost of a disability resulting from a succession of accidents. *See Silva v. Maplewood Care Ctr.*, 582 N.W.2d 566, 568, (Minn.1998); *see, e.g., Marsolek v. Miller Waste Mills*, 244 Minn. 55, 69 N.W.2d 617 (1955); *Peniston v. City of Marshall*, 192 Minn. 132, 255 N.W. 860 (1934). In 1995, though, the legislature adopted certain changes that address the ability of employers to seek apportionment of liability. First, subdivision 1a was added to Minn.Stat. § 176.191 to provide that equitable apportionment is "not allowed" except either by voluntary settlement agreement or arbitration award. Second, subdivision 5 of section 176.191 was rewritten to provide that employers or insurers may require submission of an apportionment dispute to arbitra-

tion if "the requesting party has expended over $10,000 in medical or 52 weeks worth of indemnity benefits and made the request within one year thereafter * * *." Subdivision 5 also states that the decision of the arbitrator "shall be conclusive on the issue of apportionment among employers and insurers." These amendments "are effective for apportionment proceedings instituted after July 1, 1995." Act of May 25, 1995, ch. 231, art. 2, § 112, 1995 Minn. Laws 1977, 2072. In 1997, the legislature amended subdivision 1 of section 176.191 to allow compensation judges authority to resolve issues of equitable apportionment if benefits were paid under a temporary order. Act of May 9, 1997, ch. 128, § 4, 1997 Minn. Laws 855, 856.

In *Schmoll v. Washington Scientific Indus. Inc.*, 55 Minn. Workers' Comp. Dec. 530 (WCCA 1996), the WCCA observed that the legislature had not expressly placed liability for the entire disability resulting from multiple accidents on the last carrier. The WCCA therefore concluded that the legislature had not intended to abolish equitable apportionment and that subdivision 1a had a more limited application. The *Schmoll* court also thought it highly unlikely that the legislature had intended to compel submission of important legal issues often entangled in contribution claims, such as subsequent liability causation, to binding arbitration without judicial review, thereby raising serious due process considerations. The *Schmoll* court decided:

> * * * that Minn.Stat. § 176.191, subds. 1a and 5 apply only in those cases where all employers or insurers admit or have been found by the compensation judge to have legal liability by reason of a personal injury and where the sole issue is the percentage apportionment to be allocated to the liable party or parties. This interpretation appears consistent with the language of the statute, which states that "the arbitration proceeding is for the limited purpose of apportioning liability for workers' compensation benefits payable among employers and insurers." We do not intend to suggest that the interested parties may not voluntarily agree to submit any contribution issue to binding arbitration under sub-

division 5. An employer or insurer [is] not, however, required under Minn.Stat. § 176.191, subd. 1a to submit issues of legal liability to binding arbitration.

*Id.* at 538. Subsequently, in *Silva v. Maplewood Care Ctr.*, the WCCA decided that arbitration was limited to allocating liability only after liability had been admitted or determined by a compensation judge. 58 Minn. Workers' Comp. Dec. 380 (WCCA 1997). We affirmed on other grounds. 582 N.W.2d at 569.

Here, in reliance on its decisions in *Schmoll* and *Silva*, the WCCA concluded that the 1995 amendments to Minn.Stat. § 176.191 "do not apply unless the *sole* dispute is how responsibility for benefits should be split between employers and insurers *that are all unquestionably liable for some portion of the employee's disability* for the period in question." *Peterson v. O.R. Anderberg,* — Minn. Workers' Comp. Dec. —, slip op. at — (WCCA Oct. 29, 1997) (emphasis in original). The WCCA reasoned that where Anderberg's medical evidence attributed Peterson's disability and need for medical care between the date of injury and MMI to the Northland injury, thereby placing subse-

quent liability causation [1] in dispute, the compensation judge had jurisdiction over the contribution/reimbursement claim for those benefits paid during that period. *Id.* at —. The WCCA further decided that since the compensation judge had jurisdiction to apportion liability for one portion of the period of time in dispute, judicial economy dictated that the compensation judge resolve the whole claim. *Id.*

■ Anderberg asserts that the WCCA's interpretation of the 1995 amendments to section 176.191 essentially subverts legislative intent to resolve disputes over apportionment by alternative means. We recognize that *Schmoll* and *Silva* significantly limit the application of the statute, but we believe this is consistent with the legislature's intent. Issues of "subsequent liability causation," like primary liability, are principal legal issues involving application of legal precedent, ultimately subject to determination by a compensation judge and judicial review.[2] There is nothing in the 1995 legislation suggesting an intent to compel submission of primary liability and subsequent liability causation to binding arbitration without judicial review.[3]

1. As explained by Justice Simonett, "[p]rimary liability refers to the employer's liability for the primary (original) injury; included within primary liability is an issue of causation with particular legal overtones, namely, whether the primary injury 'arises out of' the employment. If, subsequent to a primary injury, an employee claims a further, compensable injury or condition, another kind of causation issue arises. The employee may claim additional compensable disability as a result of complications or a progression of the primary injury. Or the employee may claim an aggravation of the primary injury by some subsequent incident. In either of these latter two cases, the legal test of causation is not whether the subsequent condition arises out of the employment, but whether the subsequent condition is a direct and natural result of the primary injury. *Jackson v. Red Owl Stores, Inc.,* 375 N.W.2d [13, 18 (Minn.1985); *Wallace v. Judd Brown Construction Co.,* 269 Minn. 455, 131 N.W.2d 540 (1964)]. In *Jackson,* we labeled this second kind of causation as 'medical causation' * * *. Perhaps it would be more accurate to identify this kind of jurisdictional causation as 'subsequent liability causation.' " *Gutz v. Honeywell, Inc.,* 399 N.W.2d 557, 561 (Minn.1987).

2. *E.g.,* Minn.Stat. §§ 176.106, subds. 8 and 9 (1996), 176.305, subd. 1a (1996), 176.371 (1996), 176.421 (1996), and 176.471 (1996).

3. We note that the Department of Labor and Industry has promulgated rules providing for enforcement and vacation of workers' compensation arbitration awards in accordance with the Uniform Arbitration Act. *See* Minn. R. 5229.0600, subp. 3 and 5229.0700, subp. 7 (1997). The Uniform Arbitration Act requires judicial confirmation and allows for vacation, modification, and correction of the award as well as an appeal. *See* Minn.Stat. §§ 572.18, .19, .20, and .26 (1996). The 1995 workers' compensation legislation provides none of these safeguards for workers' compensation arbitration awards through the workers' compensation system and it is rather doubtful the legislature intended to march these awards through the general jurisdiction court system. Due process requires that dispute resolution by arbitration statutes provide a minimal level of judicial review of the arbitration process and award. *See New Creative Enterprises, Inc. v. Dick Hume & Assocs., Inc.,* 494 N.W.2d 508, 513 (Minn.App.1993), *pet. for rev. denied* (Minn. Mar. 16, 1993); *see also Hunter v. Zenith Dredge Co.,* 220 Minn. 318, 326, 19 N.W.2d 795, 799 (1945) ("[d]ue process requires * * * the right of appeal from or review of a decision regarded by a litigant as unjust").

Anderberg also asserts that *Schmoll* and *Silva* are distinguishable because there was some dispute over primary liability or subsequent liability causation in those cases, whereas here the sole dispute pertained to allocation of liability. But Anderberg persisted in disputing subsequent liability causation, at a minimum with respect to pre-MMI benefits. Therefore, we believe, as did the WCCA, that the compensation judge had authority to resolve the entire dispute. It would be highly inefficient to sever such claims, sending a portion to a hearing before a compensation judge and the other portion to arbitration. Moreover, as the WCCA observed, requiring simultaneous but substantially different proceedings would serve no useful purpose and simply risk the possibility of inconsistent dispositions. We do not think the legislature intended such a result.

In summary, we conclude that the 1995 amendments to section 176.191 compelling arbitration of equitable apportionment apply only in those situations in which the sole dispute is how responsibility for benefits should be allocated among successive employers and their respective insurers when all are undisputedly liable for some portion of the employee's disability for the period in question. We further conclude that because subsequent liability causation continued to be an issue, the compensation judge had jurisdiction to apportion liability.

Affirmed.