Jacqueline S. BUSCH, Relator,

v.

ADVANCED MAINTENANCE and State Farm Fire & Casualty Company, Respondents,

Viking Foods and State Fund Mutual Insurance Co., Respondents,

and

Center for Diagnostic Imaging, Institute for Low Back & Neck Care, Corestar Health Plan, Intervenors,

and

Special Compensation Fund, Respondent.

No. C9–02–1480.

Supreme Court of Minnesota.

April 24, 2003.

Timothy J. McCoy (# 69930), McCoy, Peterson & Jorstad, Minneapolis, MN, for Employee–Relator.

Nancy E. Lamo (# 187136), McCollum, Crowley, Vehanen, Moschet & Miller, Ltd., Minneapolis, MN, for Employer/Insurer–Respondents, Advanced Maintenance and State Farm Fire & Casualty.

Steven T. Scharfenberg (# 199485), Lynn, Scharfenberg & Associates, Minneapolis, MN, for Employer/Insurer–Respondents, Viking Foods and State Fund Mutual Insurance Company.

Miriam Lantsberg, St. Louis Park, MN, for Intervenor–Respondent, Center for Diagnostic Imaging.

Larry C. Farrar, Mendota Heights, MN, for Intervenor–Respondent, Corestar Health Plan.

Michael Rasmussen, Minneapolis, MN, for Intervenor–Respondent, Institute for Low Back & Neck Care.

Mike Hatch, Attorney General, Rorey H. Foley (# 155056), Assistant Attorney General, St. Paul, MN, for Respondent, Special Compensation Fund.

## OPINION

RUSSELL A. ANDERSON, Justice.

The issue presented by this case, which we review on certiorari, is whether the Workers' Compensation Court of Appeals erred in reversing the compensation judge's determination as to the controlling event for purposes of establishing the amount and period of an injured employee's compensation. We reverse and remand.

On June 19, 1990, Jacqueline Busch sustained injuries to her low back and coccyx when she slipped and fell while working for Advanced Maintenance, a cleaning service. She sought medical care at the Alexandria Clinic on June 21, 1990 for complaints of pain in her coccyx, lower back and legs. A July 6, 1990 CT scan showed a small right disc herniation at L5–S1. Busch experienced an onset of back pain on December 2, 1990, was hospitalized overnight, and was seen by an orthopedist at St. Cloud Orthopedic Associates on December 18, 1990. In a follow-up visit on May 6, 1991, the orthopedist found Busch had reached maximum medical improvement (MMI).[1] He ultimately rated perma-

---

1. Maximum medical improvement "means the date after which no further significant recovery from or significant lasting improvement to a personal injury can reasonably be anticipated, based upon reasonable medical probability, irrespective and regardless of subjective complaints of pain." Minn.Stat. § 176.011, subd. 25 (2002).

nent partial disability at nine percent pursuant to Minn. R. 5223.0070, subp. 1 (1990).

In September 1991, Busch began working full time for Jo–Ann Fabrics as a cashier. On February 18, 1992, she was seen at the Alexandria Clinic for pain in her coccyx, radiating upward, after lifting a box. On April 28, 1992, Busch was examined by orthopedic surgeon Dr. Mark Engasser at the request of Advanced Maintenance and its workers' compensation carrier, State Farm Mutual & Casualty Company. The doctor noted that most of Busch's pain was in her coccyx area, diagnosed a ligamentous injury to her sacrococcygeal area as a result of the June 19, 1990 fall, and opined that the disc protrusion did not play any role in her ongoing symptoms. Advanced Maintenance and State Farm admitted liability for the June 19, 1990 injury and paid related medical and wage loss benefits. In 1993, Busch agreed to a settlement that included a permanent partial disability claim for a nine percent impairment. Busch continued to work full time, eight hours per day.

In 1994, Busch began working for Viking Foods as a cashier. On November 27, 1995, Busch had an acute onset of low back pain while at work. She was seen at the Alexandria Clinic on December 7, 1995. Her doctor noted that she had "chronic low back pain with intermittent flares" and pain that radiated into both legs, left greater than right, since the June 19, 1990 injury. Over the next several years, Busch reported persistent low back/coccygial pain at her annual physical examinations.

In 1999, Busch found her low back problem worsening and reduced her work schedule to three or four days, or about 24 hours per week. She had a flare-up of low-back pain at work on July 2, 1999, and a CT scan done in August 1999 showed a small herniation and disc space narrowing at L5–S1. On September 13, 1999, Busch tripped over some groceries at work and fell forward to the floor. Shortly after this incident, she experienced severe back pain and shooting pain in her right arm and leg which forced her to reduce her hours at work.

At her December 1999 annual physical exam, Busch indicated that she had experienced significant back discomfort over the preceeding three weeks. Her doctor noted that her back pain dated to the June 19, 1990 injury. Busch was referred to the Institute for Low Back and Neck Care in January 2000. Following an MRI which showed a herniation at L5–S1, Busch underwent a right L5–S1 microdiscectomy on March 10, 2000. Busch's orthopedic surgeon determined that Busch had reached MMI by October 29, 2001 and rated her permanent partial disability at 14 percent. *See* Minn. R. 5223.0390, subp. 4D (1999).

Busch filed a series of claim petitions for medical and wage loss benefits, including permanent total disability benefits continuing from March 10, 2000, naming Advanced Maintenance and State Farm, Viking Foods and its workers' compensation insurer, State Fund Mutual, and the Special Compensation Fund as parties. Busch's claims came on for hearing on November 20, 2001, at which time the parties stipulated that Busch had been permanently and totally disabled as of March 10, 2000, as defined by the law in effect on the date of both the June 19, 1990 injury and the September 13, 1999 injury. Relevant evidence at the hearing included the opinions of Drs. Jack Drogt and John Dowdle. Drogt, medical consultant for Advanced Maintenance and State Farm, opined that the 1990 injury was not a substantial contributing factor in Busch's need for surgery and apportioned 100 percent of the

responsibility for her permanent total disability and medical care to the September 13, 1999 injury. Dowdle, medical consultant for Viking Foods and State Fund, concluded that the 1990 injury was the substantial contributing cause of Busch's disability and that the 1999 injuries were temporary aggravations of the 1990 injury. He apportioned all responsibility for the low back surgery and ongoing disability to the 1990 injury.

The compensation judge found that Busch's June 19, 1990 and September 13, 1999 injuries were both substantial contributing causes of Busch's permanent total disability and need for medical care and allocated 75 percent of the liability for benefits to the 1990 injury and 25 percent of the liability for benefits to the 1999 injury. The judge further determined that the 1990 injury was the controlling event and awarded medical and permanent total disability benefits based on the allocation of liability, including supplementary benefits for that part of the award allocated to the 1990 injury. On appeal, the Workers' Compensation Court of Appeals (WCCA) reversed the controlling event determination and vacated the award of supplementary benefits. The WCCA, applying *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304 (Minn.1987), reasoned that because the compensation judge found the September 13, 1999 injury "to be a 'new, separate injury' and not a consequential injury or simple continuance of an earlier injury, the amount and period of compensation resulting from the combined effects of the employee's injuries [was] fixed by the law in effect in 1999." *Busch v. Advanced Maintenance*, 2002 WL 1979106, at *4 (Minn. WCCA Jul. 30, 2002).

■■■ On review on certiorari, we will not disturb a compensation judge's findings affirmed by the WCCA unless the findings are manifestly contrary to the evidence or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion. *Pelowski v. K-Mart Corp.*, 627 N.W.2d 89, 92 (Minn.2001) (citing *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn.1984)). If the compensation judge's findings have been reversed, "we look at the record to see if the compensation judge's findings had substantial evidentiary support." *Freyholtz v. Blackduck Sch. Dist. No. 32*, 613 N.W.2d 757, 758 (Minn.2000) (citing *Ruether v. State*, 455 N.W.2d 475, 478 (Minn.1990), and *Polaschek v. Asbestos Products, Inc.*, 361 N.W.2d 37, 42 (Minn.1985)). We consider questions of law de novo. *Vezina v. Best Western Inn Maplewood*, 627 N.W.2d 324, 328 (Minn.2001) (citing *Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 735 (Minn.2000)).

■■■ "[A] basic tenet of workers' compensation law [is] that the substantive rights of [the] employer and [the] employee are fixed, not by their agreement, but rather by the law in effect on the date of the controlling event."[2] *Joyce*, 412 N.W.2d at 307. Usually, it is the date of the most recent occurrence of a compensable personal injury which is the controlling event, and the law then in effect governs the employee's rights with respect to the claim arising out of that injury. *Id.* If a period of disability is precipitated by a mere temporary aggravation of a prior injury, however, "as opposed to a new, separate injury, the original injury continues to be the controlling event, and the employee's rights are governed by the Workers' Compensation Act in effect on compensable personal injury. *Joyce*, 412 N.W.2d at 307.

**2.** The "controlling event" may be death, the manifestation of the disabling effect of an occupational disease, or the occurrence of a

the date of the original injury." *Id.* at 307–08.

In the instant case, the parties dispute whether the law in effect in 1990 or the law in effect in 1999 governs the amount and duration of Busch's compensation. This dispute arises because of a 1995 revision of the Workers' Compensation Act. In 1995, the legislature repealed the supplementary benefits program that provided benefits if the permanent total disability benefits provided by Minn.Stat. § 176.101, subd. 4 (2002), fell below 65 percent of the statewide average weekly wage. Act of May 25, 1995, ch. 231, art. 1, § 35 and art. 2, § 110, 1995 Minn. Laws 1998, 2072. The elimination of supplementary benefits was balanced by an increase in the minimum compensation rate for permanent total disability to 65 percent of the statewide average weekly wage. Act of May 25, 1995, ch. 231, art. 1, § 20, 1995 Minn. Laws 1990.[3]

In *Joyce*, we also addressed the effect of a change in the Workers' Compensation Act. The relevant amendment applied to injuries occurring on or after January 1, 1984, and capped temporary total disability benefits at 90 days past MMI. *Joyce*, 412 N.W.2d at 305–07; Act of June 7, 1983, ch. 290, §§ 48, 176, 1983 Minn. Laws 1341, 1405. The employee in *Joyce* had sustained multiple injuries, all but one of which had occurred prior to this 1983 amendment. 412 N.W.2d at 306. The compensation judge limited temporary total disability benefits for the 1984 injury to the period ending 90 days after MMI. *Id.* On appeal, the majority of the WCCA was of the opinion that following the 1984 injury, the employee had a vested right under the pre–1984 Act to ongoing temporary total disability benefits and that the limitation on temporary total disability benefits based on MMI provided by the 1983 revisions was inapplicable. *Id.* at 306–07.

 On review on certiorari, we reversed, holding that the law in effect at the time the employee sustained a separate, new injury in 1984 governed his workers' compensation rights. *Id.* at 307–08. In so doing, we noted that the WCCA's award included compensation for permanent partial disability under the 1984 law and wage loss benefits under the pre–1984 law but calculated on the employee's wage basis on the date of the 1984 injury. We said, "It seems to us that neither the employee nor the WCCA can straddle the demarcation line between the 'old' and 'new' laws and keep a foot in each camp." *Id.* at 307. As for "vesting," we said that compensation rights were contingent on the disability for

**3.** Supplementary benefits were paid by the employer with a right of reimbursement from the Special Compensation Fund. Minn.Stat. § 176.132 (1994) (repealed 1995). When the costs to the Special Compensation Fund rose to over $40 million annually, there were a number of recommendations for change, including elimination of the supplementary benefits program. *See Minnesota Department of Labor and Industry Report to the Legislature on Workers' Compensation in Minnesota* 52–57 (January 1988); *Minnesota Legislative Auditor Report to the Legislature on Workers' Compensation Program* 93–100 (February 1988). In 1992, the supplementary benefits provision was amended to provide supplementary benefits only to those who were permanently totally disabled. Act of April 28, 1992, ch. 510, art. 1, §§ 10, 14, 1992 Minn. Laws 596, 598. In 1995, the supplementary benefits provision was repealed, and the minimum permanent total rate was set at 65 percent of the statewide average weekly wage. Act of May 25, 1995, ch. 231, art. 1, §§ 20, 35, and art. 2, § 110, 1995 Minn. Laws 1990, 1998, 2072. The Special Compensation Fund has taken the position that the repeal of supplementary benefits is not retroactive and reimburses supplementary benefits for injuries occurring before October 1, 1995. *Minnesota Workers' Compensation Deskbook* § 13.4, at 13–9 (Jay T. Hartman & Thomas D. Mottaz eds., 2d. ed.1997).

which compensation was sought and did not vest until the causal relationship between that disability and prior work-related injuries had been proved. *Id.* at 308. We also said that vesting was a "two-way street;" and even though an employee may regard application of one version of the law over another to be in his or her best interest,

> to treat disability caused in substantial part by each of several injuries as governed by the statute in effect at the time of the original injury or to apportion the disability among several contributing injuries and apply the statute in effect on the date of injury to the portion of disability attributable to each injury would not only represent a significant depar-

ture from the principles upon which the law of workers' compensation rests; but would also in likelihood be a disservice to employees and employers alike. *Id.*[4]

In support of her position that the WCCA erred in reversing the compensation judge's determination that the 1990 injury was the controlling event, Busch argues that a "controlling event" determination is a factual one subject to affirmance unless clearly erroneous or unsupported by substantial evidence.[5] We disagree. The determination of controlling event is a legal conclusion which follows from factual findings that an injury is either a new, separate injury or a consequential injury, recurrence, or mere

---

4. Busch asserts that *Joyce* was "repudiated" by *DeNardo v. Divine Redeemer Memorial Hosp.*, 450 N.W.2d 290 (Minn.1990), a case involving an equitable allocation of liability for wage loss benefits between successive insurers and employers. In workers' compensation, "an employer takes an employee with whatever preexisting maladies he or she may have." *Silva v. Maplewood Care Ctr.*, 582 N.W.2d 566, 568 (Minn.1998). Consequently, "[w]hen a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation." 9 Arthur Larson & Lex K. Larson, *Larson's Workers Compensation Law* § 153.00 (2003); *see also Michels v. Am. Hoist & Derrick,* 269 N.W.2d 57, 59 (Minn.1978) (holding that employee is entitled to prompt payment of full benefits when employment immediately preceding total disability contributed to the disability). In Minnesota, to temper the harshness of requiring a single insurer to assume the entire cost, common law principles of equitable apportionment permit apportionment between insurers "when two or more successive injuries combine to produce the final disability." *Silva,* 582 N.W.2d at 568. But the computation of the amount and period of compensation due the employee "'has nothing to do with equitable apportionment— the proportionate allocation of liability among

various employers and insurers * * *.'" *Johnson v. Tech Group, Inc.*, 491 N.W.2d 287, 288 (Minn.1992) (quoting *Marose v. Maislin Transp.*, 413 N.W.2d 507, 513 (Minn.1987)). Generally, where equitable allocation of liability is appropriate, after the employee's compensation is calculated, the employers and insurers are assessed according to the so-called *Kaisershot* formula. *See Kloss v. E & H Earthmovers,* 472 N.W.2d 109, 112–13 (Minn. 1991) (citing *Kaisershot v. Archer Daniels Midland Co.,* 23 Minn. Workers' Comp. Dec. 706 (Indus. Comm'n 1996)). Of course, a different assessment might be made when there is a need to address the total diminution in earning capacity caused by successive injuries in the calculation of the employee's benefits. *See Patrin v. Progressive Rehab Options,* 497 N.W.2d 246, 248 (Minn.1993) (citing *Kirchner v. Anoka County,* 339 N.W.2d 908 (Minn.1983), *appeal after remand,* 410 N.W.2d 825 (Minn.1987)).

5. Busch is essentially asking us to revisit *Joyce,* but she has presented no compelling reason for doing so. *Cf. Oanes v. Allstate Ins. Co.,* 617 N.W.2d 401, 407 (Minn.2000) (presenting court with compelling reason sufficient to override stare decisis concerns); Geoffrey R. Stone, *Precedent, the Amendment Process, and Evolution in Constitutional Doctrine,* 11 Harv. J.L. & Pub. Pol'y 67, 71–73 (1988) (discussing reasons for overruling a case).

temporary aggravation. *See* 5 Arthur Larson & Lex K. Larson, *Larson's Worker's Compensation Law* § 93.05(3) (2003). We conclude, therefore, that the WCCA did not err in applying a de novo standard of review.

■■■ Busch also maintains that the compensation judge found that the 1999 injuries were "at most re-occurrences" and not new, separate injuries. The compensation judge's equitable allocation of liability for permanent total disability compensation, however, suggests otherwise and apparently prompted the WCCA to conclude that a finding of a "new, separate injury" in 1999 had been made. *Busch,* 2002 WL 1979106, at *4. As the Special Compensation Fund points out, the compensation judge did not make such a finding. We agree with the Fund's position that, instead of finding implicit in the compensation judge's allocation of liability a finding that the 1999 injury was a discrete, new injury, the more appropriate remedy is a remand to the compensation judge for a factual finding.

On remand, the compensation judge must first determine whether Busch's 1999 injury was either a new, separate injury or a consequential injury, a recurrence, or a mere temporary aggravation. After the judge makes the requisite factual finding, she can then draw the legal conclusions necessary for a proper computation of the amount and period of compensation. In other words, if the judge finds that Busch's 1999 injury was a new, separate injury, the 1999 injury is the controlling event as a matter of law. If, on the other hand, the judge determines that Busch's 1999 injury is a recurrence or mere temporary aggravation, the 1990 injury is the controlling event. Finally, after determining which injury is the controlling event for the purposes of determining the amount and period of compensation due

Busch, she may reconsider and/or clarify the equitable allocation of permanent total disability.

Employee is awarded $800 in attorney fees.

Reversed and remanded.